PIERRON v PIERRON

Docket No. 282673. Submitted January 13, 2009, at Detroit. Decided February 3, 2009, at 9:00 a.m. Leave to appeal sought.

Timothy Pierron obtained a divorce from Kelly Pierron in the Wayne Circuit Court. Under an amended judgment of divorce, the parties have joint legal custody and shared parenting time with regard to their two minor children. The judgment also provided that the defendant's residence is the primary residence and that each party's residence is the children's legal residence. At the time of the divorce, both the plaintiff and the defendant resided in Grosse Pointe Woods and the children attended the Grosse Pointe Public Schools. When the defendant moved to Howell and attempted to enroll the children in the Howell Public Schools, the plaintiff moved for an order directing that the children attend the Grosse Pointe Public Schools and that the plaintiff be awarded sole custody of the children. The court, Lita M. Popke, J., conducted an evidentiary hearing to determine whether it was in the best interests of the children to remain in the Grosse Pointe Public Schools or to be enrolled in the Howell Public Schools. The court then ruled that the defendant had failed to establish by a preponderance of the evidence, much less clear and convincing evidence, that it is in the best interests of the children to change their school district. The defendant appealed from the court's order requiring the children to remain enrolled in the Grosse Pointe Public Schools and the court's refusal to consider the merits of her request for attorney fees.

The Court of Appeals *held*:

1. The defendant was free to relocate the children's residence to Howell, approximately 60 miles from Grosse Pointe Woods, without first seeking the permission of the circuit court or the consent of the plaintiff because such permission or consent is statutorily required only where the move is more than 100 miles.

2. A relocating parent who shares legal custody with another parent does not have the authority to unilaterally make important decisions affecting the welfare of the children, such as where their children will attend school, even if the relocating parent is the primary physical custodian. Where parents who are joint legal custodians cannot agree on important matters such as education,

the court must determine the issue in the best interests of the children by holding an evidentiary hearing and considering the relevant best-interest factors contained in MCL 722.23. Where the proposed change will not alter the children's established custodial environment, the proponent of the change has the burden of proving by a preponderance of the evidence that the change would be in the children's best interests. Where the change would alter the established custodial environment, the proponent must prove by clear and convincing evidence that the change would be in the children's best interests.

3. The circuit court's determination that an established custodial environment existed in both parents' homes was not contrary to the great weight of the evidence.

4. The circuit court erred by determining that the proposed change of school districts would alter the children's established custodial environment. The proposed change would not have altered the actual custodial arrangements in this case. The change would require only minor modifications to the plaintiff's parenting time and does not amount to a change of the established custodial environment. The circuit court erred by requiring the defendant to prove by clear and convincing evidence, rather than a preponderance of the evidence, that the change of school districts would be in the children's best interests.

5. The circuit court erred in several respects, both legally and factually, in its consideration of some of the statutory best-interest factors. The court failed to narrowly focus its consideration of each factor on the specific important decision affecting the welfare of the children at issue.

6. The defendant likely satisfied her burden of proof on the change-of-school issue.

7. The order directing that the minor children remain enrolled in the Grosse Pointe Public Schools must be vacated and the matter must be remanded for reevaluation of the change-of-school issue consistent with the opinion of the Court of Appeals. On remand, the circuit court should consider up-to-date information including, but not necessarily limited to, the current and reasonable preference of the children and any other changes that may have arisen in the interim period.

8. If the circuit court determines on remand that the children should remain enrolled in the Grosse Pointe Public Schools, the result would be tantamount to a de facto change of physical custody from the defendant to the plaintiff and necessitate an additional review of the best-interest factors to determine whether

the plaintiff could prove, by clear and convincing evidence, that the change of custody would be in the children's best interests. If the plaintiff were to meet this burden, the circuit court would be free to make the plaintiff the children's primary physical custodian. If the plaintiff were to fail to meet this burden, the circuit court may realistically have no alternative but to determine which parent shall have sole custody of the children.

9. If the circuit court determines on remand that the defendant satisfied her burden of proving that it is in the best interests of the children to attend the Howell Public Schools, the plaintiff could move for a change of custody. The defendant's 60-mile move to Howell, coupled with the accompanying change in the children's school environment, would likely constitute a sufficient change of circumstances that warrants consideration of a change of custody. The circuit court would be required to hold a full change-of-custody hearing to consider the best-interest factors if the plaintiff established proper cause or a change of circumstances, and the plaintiff would be required to prove by clear and convincing evidence that the requested change of custody would be in the children's best interests.

10. If the circuit court determines on remand that it is in the children's best interests to attend the Howell Public Schools and the plaintiff carries his burden in a full change-of-custody hearing of proving that a change of custody would be in the children's best interests, the circuit court may have no alternative but to determine which parent shall have sole custody of the children.

11. The circuit court did not err by refusing to consider the merits of the defendant's request for attorney fees that was raised for the first time in a motion for reconsideration. That determination must be affirmed.

Affirmed in part, vacated in part, and remanded for further proceedings.

1. PARENT AND CHILD — CHILD CUSTODY — RESIDENCE CHANGE BY ONE PARENT — 100-MILE LIMIT.

Where a child's custody is governed by court order, a custodial parent can move the child's residence by less than 100 miles without first obtaining permission from the court or the consent of the other parent (MCL 722.31[1]).

2. PARENT AND CHILD — CHILD CUSTODY — JOINT LEGAL CUSTODY — DECISION-MAKING AUTHORITY.

Parents sharing joint legal custody of a child share decision-making authority regarding the important decisions that affect the welfare

of the child such as where the child will attend school; where such parents cannot agree on important decisions, it is the court's duty to determine the issue in the best interests of the child by focusing its consideration of each best-interest factor on the specific important issue affecting the welfare of the child (MCL 722.23).

3. PARENT AND CHILD — CHILD CUSTODY — BEST-INTEREST FACTORS — WORDS AND PHRASES — PREFERENCES OF CHILD.

A circuit court considering the best-interest factors stated in the Child Custody Act must consider the reasonable preference of the child where the court deems the child to be of sufficient age to express a preference; a child's preference need not be accompanied by detailed thought or critical analysis, but may not be arbitrary or inherently indefensible, in order to be a reasonable preference (MCL 722.23[i]).

*Scott Bassett* and *Miller, Canfield, Paddock and Stone, P.L.C.* (by *Lynn Capp Sirich*), for the plaintiff.

*Beverly Safford* for the defendant.

Before: CAVANAGH, P.J., and JANSEN and METER, JJ.

JANSEN, J. In this child custody dispute, defendant appeals by right the circuit court's order requiring that the minor children remain enrolled in the Grosse Pointe Public Schools. Defendant also challenges the circuit court's refusal to consider the merits of her request for attorney fees. We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

I

Plaintiff and defendant were married in October 1993, and were divorced in April 2000. The parties had two children during the marriage—Andrew Pierron, born May 6, 1994, and Madeline Pierron, born January 25, 1999. The judgment of divorce granted the parties

joint legal custody of the children, but granted defendant sole physical custody of the children. Plaintiff was granted "reasonable and liberal parenting time with the minor children, in a manner consistent with the children's best interests, which shall include alternate weekends, alternate holidays, time during school and summer vacations, and as otherwise agreed between the parties." The judgment of divorce specifically provided that "[b]oth parents shall be fully informed with respect to the children's progress in school and shall be entitled to participate in all school conferences, programs and other related activities in which parents are customarily involved," and that "[b]oth parents shall have full access to the children's school records, teachers, [and] counselors . . . ." The judgment further provided that "[t]he State of Michigan shall be the domicile and residence of the minor children, and the domicile and residence of the minor children shall not be removed from the State of Michigan without the approval of the Judge who awarded custody, or his successor, until the children attain the age of eighteen (18) or until further order of the Court."

An amended judgment of divorce, entered in June 2001, stated in relevant part that "the Judgment of Divorce shall be amended to provide that the parties shall have joint legal custody and shared parenting time." The amended judgment also provided that "[defendant's] residence continues as primary residence; each party's residence is the child's legal residence pursuant to statute. . . . In all other respects and except as herein stated the Judgment of Divorce shall remain in full force and effect." At the time of the amended judgment of divorce, both plaintiff and defendant resided in Grosse Pointe Woods and the children attended the Grosse Pointe Public Schools.

Sometime in mid-2006, defendant inherited money from her late father. Defendant decided to use the money to purchase a new home.[1] In April 2007, defendant made an offer to purchase a home in Howell. Upon learning of defendant's actions in this regard, plaintiff's attorney sent defendant a letter on April 27, 2007, which stated in relevant part, "While [plaintiff] certainly understands your desire to move to Howell and be closer to your sister, he believes that such a move at this time is not in the best interest of the minor children." The letter alleged that defendant's planned move to Howell would "hamper [the children's] access" to plaintiff and would "have a profound and negative impact on the children's relationship with their father . . . ." Plaintiff's attorney wrote that plaintiff was "willing to go to great lengths to find a workable solution that will allow the children to remain in their community and physically close to both parents," and continued:

> To demonstrate his commitment and concern for the minor children, [plaintiff] is willing to move out of his current Grosse Pointe Woods residence and sell it to you for $150,000, the identical price of the Howell condo you are currently planning on purchasing. [Plaintiff] is willing to do this, despite the fact that his house is worth approximately $250,000 in today's market. As you know, [plaintiff] has made significant improvements to this house and would basically be giving you $100,000 in free equity. The insurance and taxes on the Grosse Pointe Woods residence are somewhat comparable to the taxes, insurance and association dues which you would pay for your new condominium. Moreover, the taxes and insurance would be deductible and provide a significant savings towards your income tax. The offer to purchase [plaintiff's] residence at a $100,000 below-market value is contingent upon you agreeing to remain within 20 miles of

---

[1] Since the divorce, defendant had been renting a home in Grosse Pointe Woods.

Grosse Pointe Woods until the minor children graduate from
high school or further agreement.

The letter urged defendant to seriously consider plaintiff's offer and asked that defendant "take into account the potentially devastating effects a move to Howell could have on the children at this time . . . ."

On May 23, 2007, in anticipation of defendant's planned move to Howell, plaintiff's attorney sent a second letter, accompanied by a proposed stipulated order regarding parenting time. In addition to requesting significant parenting time for plaintiff, the proposed stipulated order would have required defendant to "be responsible for all transportation for parenting time" and to "deliver the children to Plaintiff-Father's home at the commencement of his parenting time and pick up the children at the end of Plaintiff-Father's parenting time." In response to this proposed stipulated order, defendant expressed that she was "unwilling and unable to drive in both directions for parenting time exchanges" between Howell and Grosse Pointe Woods, and that she was "willing to drive one (1) way" only.

In June 2007 defendant moved to Howell, and in July 2007 defendant attempted to enroll her children in the Howell Public Schools. Plaintiff remained opposed to defendant's move with the children, and therefore filed a motion on July 13, 2007, in an effort to prevent the change of school districts.[2] The motion alleged that plaintiff had learned that defendant "intended to move with the children from Grosse Pointe Woods to Howell, Michigan, more than sixty (60) miles away," and that he had "discovered, from the minor children, that Defendant intended to remove the children from the Grosse Pointe school system and enroll them in Howell Public Schools

---

[2] This motion of July 13, 2007, was entitled "Plaintiff's Motion Regarding School, Change of Custody, Etc."

for the 2007-2008 school year." The motion asserted that plaintiff had "made several attempts to talk with Defendant and propose alternatives that would allow for the children to remain in the Grosse Pointe Woods area," but that plaintiff had been "rebuffed and ignored." Plaintiff argued that defendant's "unilateral decision to move the children more than an hour from Plaintiff's home and completely uproot them from their school district" was both "a violation of the joint legal custody provision of the parties' Judgment of Divorce" and "a significant modification of the children's established custodial environment and a proper cause for the court to consider a modification of the custodial arrangement." Plaintiff requested "that an order be entered directing that the minor children attend Grosse Pointe . . . schools" and that the court "render an award of sole custody to the Plaintiff."

The circuit court conducted a six-day evidentiary hearing during September and October 2007 for the purpose of determining whether it was in the best interests of the minor children to remain enrolled in the Grosse Pointe Public Schools or to be enrolled in the Howell Public Schools. The court considered both the testimony of witnesses and a stipulated statement of facts that had been jointly submitted before the hearing. Substantial evidence was presented concerning the relative quality of the Grosse Pointe and Howell school districts. The court also heard significant evidence concerning the available amenities, recreational opportunities, crime rates, and quality of life in the communities of Grosse Pointe Woods and Howell.

At the conclusion of the evidentiary hearing, the circuit court read its decision from the bench:

> Parents who enjoy joint legal custody are entitled to share in decisions concerning their children's education . . . .

Neither parent may unilaterally decide which school a child attends nor may a parent change the school without attempting to consult and obtain the agreement of the other parent. Where a dispute arises, the Court must decide the issue utilizing the applicable best interest factors contained in the Child Custody Act, MCL 722.23. . . .

In school cases, as in all cases where the custody analysis is triggered, the Court must initially ascertain whether a prior order has been entered by the Court. If a prior order addressing the relevant custody issue exists, MCL 722.27(1)(c) provides that a court may not modify that prior order absent a showing of proper cause or change in circumstances. This threshold determination may be made by the Court without an evidentiary hearing. . . .

\* \* \*

[A]s in the present case, if there is no prior order addressing the school, generally it must be established by a preponderance of the evidence that the change in schools is in the best interests of the child.

If, however, the change in schools will also impact the established custodial environment as defined in MCL 722.27(1)(c), the moving party has the burden of proving by clear and convincing evidence that the change of schools is in the best interests of the child.

In that situation the Court may address not only the change in schools but whether there should be a change in custody. The Court must make specific findings concerning each of the . . . best interest factors outlined in MCL 722.23. The Court must also address the factors separately as to each child. . . .

In the present case there was no prior court order addressing where the Pierron children would attend school. Until the 2007, 2008 school year, the parents were in agreement that the children would attend the Grosse Pointe public school system.

The Court must next address whether the proposed school change to Howell would change the established

custodial environment of the children. MCL 722.27 defines the established custodial environment, quote, "the custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered." End quote.

The Court must look at the substantive situation including the psychological and physical relationship between the parents and the child in order to determine the existence of an established custodial environment with the parents. This is the reason why the law disregards how the established custodial environment was created and requires the Court to ascertain the realities of the situation and not how it came to occur. . . .

It is also important to remember that an established custodial environment can occur in both homes or in neither. If an established custodial environment exists, it may not be changed without a showing of clear and convincing evidence. MCL 722.27(1)(c) . . . .

Quote, "on the contrary, if the Court finds that no established custodial environment exists, then the Court may change custody if the party bearing the burden proves by a preponderance of the evidence that the change serves the child's best interest." Unquote. . . .

The underlying intent of the Child Custody Act is to minimize the prospect of unwarranted and disruptive change of custody orders and to erect a barrier against removal of a child from an established custodial environment except in the most compelling cases. . . .

This policy applies to changing schools as well.

In the present case the last custody order was entered on June 6th, 2001, and provided, quote, ["T]he parties shall have joint legal custody and shared parenting time. The husband's parenting time shall include overnights and all mutually agreeable times including first option of parent-

ing time when and if wife/defendant resumes and/or returns to full-time employment or continued education that requires night classes.["]

"Wife's residence continues as primary residence. Each parties' residence is the child's legal residence pursuant to statute. Nothing in the judgment shall be deemed the basis for the shared economic formula to apply." End quote.

The mother's proposed change of schools will impact this agreed upon parenting time schedule. Howell is 60 miles from Grosse Pointe. Week night overnights and a first option for parenting time would be impractical. The change in schools would require a modification in parenting time. The distance factor would also impinge on the father's ability to provide educational guidance, discipline, and the necessities of life.

The testimony established that Dr. Pierron was involved on a continuing basis with [the] children's education. He visited the schools regularly, took the children to lunch on occasions, picked them up from tutoring, and saw them regularly despite the absence of a specific parenting time schedule.

This established custodial environment was one of flexibility and continued involvement. The Court finds that the proposed school change would alter the established custodial environment of these children; as a result Ms. Pierron has the burden of establishing by clear and convincing evidence that the change is in the best interests of the children.

The Court will . . . now apply the 12 best interest factors utilizing the burden just referenced.

The best interests of the child are codified in MCL 722.23. The Court must look at each factor as it relates to Ms. Pierron's request to change schools and state its conclusion. . . .

The circuit court then addressed each of the best-interest factors contained in MCL 722.23, purporting to limit its consideration of each factor to the change-of-school issue only. The court made findings of fact with respect to each factor.

The circuit court first delivered its findings of fact with respect to factor a, MCL 722.23(a):

> The testimony established that the parties are both devoted to their children. While the parties are in agreement that Madeline is a daddy's girl, the testimony also established a strained relationship between Andrew and his father since the school issue surfaced.
>
> Andrew has exhibited resistance to the Grosse Pointe school system, argued with his father, swore at him, and even ran away from school. His resentment toward his father suggests that the emotional ties between him and his father are strained.
>
> There was no testimony to suggest, however, that the emotional ties between Andrew and his father were not strong prior to the school issue being raised.
>
> While there was some limited discussion of the proposed move between the parents, the lack of a serious discussion about the issue was clearly the catalyst to the current turmoil the children are facing and the deterioration in the children's attitude toward their father.
>
> Ultimately it is Ms. Pierron who must bear responsibility for the current struggles facing her children. She should have ensured the school issue was resolved before moving to another community. She claims she thought her ex[-] husband wasn't opposed since he told her he wouldn't sue her for moving to Howell. However, such an analysis is hardly akin to an agreement that the children should be enrolled in another school district.
>
> Ms. Pierron also failed to timely respond to offers on behalf of Dr. Pierron for housing arrangements. Since this factor is geared primarily, however, toward the existence of love and emotional ties, the Court finds that the parties are equal.

Next, with respect to factor b, MCL 722.23(b), the court determined:

> Both parties are equally capable and generally disposed to give the children love, affection, and guidance. The

testimony established, however, that Dr. Pierron has the better capacity and disposition to educate and raise the children in their religious creed. The children, [D]r. Pierron, and his parents all attend the Grosse Pointe United Methodist Church and have done so throughout their lives. They are active members. Madeline is involved in choir or has expressed an interest to be involved in choir.

Ms. Pierron, on the other hand, does not attend church nor does she take the children to church. This factor favors Dr. Pierron.

The circuit court then considered factor c, MCL 722.23(c):

Dr. Pierron is a radiologist with an annual income of over $200,000. He provides all health insurance for his children.

Ms. Pierron is unemployed. She does some upholstery work an[d] teaches figure skating earning approximately $8,000 to $11,000 per year. Her primary source of income, however, is the over $28,000 per year in child support she receives from her ex[-]husband. While she states that living in Howell is more conducive to obtaining full-time employment, she has not done so. Nor was there any testimony of her efforts to obtain employment. There is no certainty that she will be able to obtain employment. She has not even explored part-time employment opportunities.

Hence, Ms. Pierron failed to show that moving the children to the Howell school district would improve her ability to provide for the children financially. Her financial situation has not changed.

Her allegations that Dr. Pierron did not pay his child support in a reliable manner simply were not supported by the evidence.

Ms. Pierron provided photographs of her new condominium in Howell[,] which is newer and larger than her home in Grosse Pointe [Woods]. While her home is lovely, the Court simply cannot base a change in schools on the size of the parties' homes. The focus must be on whether it

is in the children's best educational interest to change school districts. There was no showing that the size and quality of her home impacted her children's education.

In addition, the parties stipulated that the children would continue to see their same dentist and doctor, both located on the east side. Dr. Pierron has been involved in the children's dental and medical health. Based on the evidence, Ms. Pierron has failed to establish how changing the school district would benefit the children in terms of their health care.

The court then addressed factor d, MCL 722.23(d):

Analyzing this factor in a school decision case requires the Court to look at the educational environment which existed for the children and whether it was stable and satisfactory. It is under this factor that the Court can compare the suitability of the particular schools for the parties' children.

The Court need not determine which school is the better district in general, but whether the existing school serves the needs of the children and whether there is any reason to change that school environment.

The existing school environment in this case is the Grosse Pointe public school system. Ms. Pierron has the burden of showing that the Grosse Pointe schools do not provide a stable and satisfactory environment for her children.

Andrew and Madeline have attended school in this district throughout their educational lives. The children and their parents are known to their teachers and administrators. The schools are located in close proximity to the parties' home. Dr. Pierron has regularly attended parent/teacher conferences. Ms. Pierron attended the conferences but failed to do so in 2006 [and] 2007 claiming it was unnecessary to do so.

Grosse Pointe scores at the top of the scale in terms of graduation rates, MEAP scores, and student/teacher ratios. Susan Allen, the Assistant Superintendent for Curriculum Development, testified regarding the Grosse Pointe school

system and the programs it offers students. Counselors and student support teams are available for shy or struggling students such as Andrew. No-cut athletic programs are also available for less athletically competitive students like Andrew. The school system is stable and satisfactory.

Ms. Pierron argued that the Grosse Pointe schools were not satisfactory because the[y] did not properly address the bullying of Andrew. Other than her testimony no evidence was introduced to support the argument that Andrew was, in fact, bullied or that this was any significant educational occurrence. In fact, Andrew's tutor, Deb Dixon, testified that Andrew said he was teased. Both Grosse Pointe and Howell have antibullying policies to address inappropriate behavior. Neither policy appears to be superior.

Ms. Pierron also argues that Howell has busing which will benefit her children. Ms. Pierron failed to establish, however, how busing the children will help their educational development. Moreover, the evidence established that Madeline will be on the bus 25 minutes each way, and Andrew as long as 1 hour and 10 minutes at the end of the school day.

Ms. Pierron claims this will assist her ability to obtain . . . employment, but she failed to show how it would benefit her children's education. Moreover, there was testimony regarding sexually inappropriate activity on the Howell buses on two occasions. Dr. Pierron attended a School Board meeting and expressed concern as did other Howell parents regarding the handling of the bus issue. There was no showing that busing will benefit the Pierron children.

While the testimony of the Assistant Superintendent, Lynn Parrish, regarding the Howell public school system was quite impressive, there was no showing the Pierron children would be better served in Howell. Howell, although it does well, does not score as high as Grosse Pointe in graduation rates, MEAP scores, or student/teacher ratio.

While Howell appears to be a fine school district, there is no showing that the Pierron children's school district should be changed.

Concerning factor e, MCL 722.23(e), the circuit court determined:

> Ms. Pierron maintains that one of the reasons she moved to Howell was to be closer to her sister and her mother. In fact, Ms. Pierron's sister lives about 25 minutes away and her mother lives in West Bloomfield. The move to Howell did not improve the family unit of the children.
>
> [On the] other hand, the move to Howell does impact the family unit of Dr. Pierron. The testimony established that Dr. Pierron's parents have been actively involved in the children's lives including driving Madeline to dance and previously taking Andrew to archery. The grandparents are also involved in the children's religious development.
>
> Ms. Pierron admitted the children have a close and loving relationship with their paternal grandparents. This family relationship would be greatly interrupted by a change to the Howell school district. This factor favors the children remaining in the Grosse Pointe school district.

Next, with regard to factor f, MCL 722.23(f), the court determined:

> This factor is not an issue in this school determination case. Both parents appear to be morally fit. Sadly, however, Ms. Pierron did attempt to introduce evidence that Dr. Pierron's brother had a drug problem, presumably to favor herself on this factor. It was established, however, that Dr. Pierron's brother's substance abuse problems occurred 20 years ago and he has obtained employment with the National Zoo since that time.
>
> As I said, the parties are equal on this factor.

In considering factor g, MCL 722.23(g), the circuit court opined:

> Both parties are mentally and physically able to care for their children. The only relevant testimony on this issue was the fact that Dr. Pierron's medical condition of multiple sclerosis limits his ability to relocate to other areas since he feels he would have difficulty obtaining a position

at another hospital. He, therefore, would not have the option of moving closer to his children.

On the other hand, Ms. Pierron has no physical limitations that would limit the location where she could live.

Both parties are equal on this factor.

And with respect to factor h, MCL 722.23(h), the court found:

Andrew Pierron has struggled academically, but Madeline has performed well in the Grosse Pointe school system. Although Andrew appears to have few extracurricular activities, Madeline is involved in a dance program. She has also exhibited an interest in participating in the church choir in her father's church in Grosse Pointe.

The children had a private educational tutor in Grosse Pointe paid for exclusively by their father. Ms. Pierron would not take the children to the tutor after she moved to Howell. The proximity of the school to Dr. Pierron's home permitted him to attend functions during the day on occasion including having lunch with his children, attending graduation ceremonies, ice cream socials, and other activities.

Dr. Pierron would be unable to participate in daytime and after school functions in Howell because of the distance and his work schedule.

When Andrew left school in September 2007, Dr. Pierron was able to immediately address the issue because of his close proximity to the school. Having both parents available to attend school functions and address emergency situations is in a child's best interest.

It is also important to note that Andrew's attitude towards school changed dramatically after his mother expressed her interest in moving to Howell. His tutor testified that his attitude changed at the time he indicated they might move. Andrew told his father he had no interest in going to college but simply wanted to get a job after high school. An opinion he apparently did not espouse earlier.

In fact, the tutor opined that Andrew was influenced in his opinion by his mother and older brother. Ms. Dixon also

testified that, in her opinion, Andrew needed structure and discipline to succeed in his education.

The parties presented extensive evidence on the communities of Grosse Pointe and Howell. Both communities offer a wide variety of cultural, educational, and athletic opportunities to their citizens. The evidence did not establish, however, that the Howell community offered more to the Pierron children than the Grosse Pointe community such that the Court should change their school system.

Again, the focus is not on the communities, but on whether there are substantial reasons to change the school district the children currently attend. There was also extensive testimony regarding crime statistics and the convicted sexual felon registry. Ms. Pierron claims the crime rate is lower in Howell than Grosse Pointe. The evidence did not establish, however, that the criminal activity level in Howell warrants a move to that school district. While the area of Grosse Pointe in which Ms. Pierron lived bordered the higher crime neighborhoods of Detroit, there is also criminal activity in Howell and convicted sexual offenders within a relatively close proximity to her home in Howell. The evidence simply did not support Ms. Pierron's position on this issue.

Ms. Pierron also argued that the country atmosphere in Howell would benefit Andrew because he could ride his bike. Although the rural atmosphere is appealing, the evidence simply did not establish that Andrew could not adequately address his physical activity in Grosse Pointe.

This factor [favors] the father's request that the children remain in their current school district.

The circuit court next addressed factor i, MCL 722.23(i):

The Court has interviewed Andrew and Madeline Pierron and taken their views into consideration.

Dr. Pierron and Ms. Pierron both concede that the children would prefer the Howell school system. The Court notes, however, the children have not attended Howell

schools as a result of this Court's order that they remain in the Grosse Pointe schools until the Court determines the issue. Therefore, the preference of the children cannot be based on any factual comparison between the two school districts.

The court then made findings of fact concerning factor j, MCL 722.23(j):

Dr. Pierron was opposed to the change in school districts from the beginning. While he may have told his ex[-]wife he wouldn't sue her, he certainly did not consent to change in the school district.

In fact, Dr. Pierron offered to sell his house to his ex[-]wife at a price nearly $100,000 below market value in order to encourage her to remain in the Grosse Pointe school district. He offered her his home at the price she paid for her Howell condominium. He also attempted to negotiate a parenting time schedule while she lived in Howell.

While this motion was pending, Dr. Pierron [also] offered to lease a home for her and the children in Grosse Pointe so the children would not have to travel 60 miles each way to school. During the trial he stated that he would have assisted with the taxes for the Grosse Pointe home if that was necessary.

Ms. Pierron rejected or failed to respond to all of Dr. Pierron's efforts. Her desire to move her children 60 miles away from their father suggests a desire to frustrate the parent/child relationship.

The testimony of several witnesses suggests that once the children, particularly Andrew, became aware of their mother's desire to move, they reacted negatively to their father's efforts to prevent the move. Thus creating a wedge in the parent/child relationship. Andrew swore at his father for the first time, refused to visit with him, and even ran away from school, all out of anger over Dr. Pierron's position on the school issue.

There was even testimony that the older child of Ms. Pierron, Ian, had met with her attorney to discuss this

case. Ms. Pierron contacted the newspaper which printed a story entitled, quote, "Divorce Judge to Pick Kids' School," unquote.

There are numerous other communities closer to Grosse Pointe that offer many of the same opportunities as Howell but would also permit a close relationship between the children and their father. The options of nearby communities were not adequately explored. Ms. Pierron did not work with a realtor in her effort to relocate.

Dr. Pierron repeatedly stated his strong conviction that children need both parents actively involved in their lives. He felt the move to the Howell school district would impede his ability to participate in their educational and every day lives. Without both parents in their lives on a daily basis, Dr. Pierron feels the children face a higher potential for failure. This is especially true in his opinion because Andrew struggles academically. He wants to be there for his son to help guide his educational development.

Ms. Pierron feels Dr. Pierron can still participate adequately from Grosse Pointe, but she did not otherwise address his concerns nor the general philosophy of the need for two parents to raise their children actively and on a daily basis.

She listed Dr. Pierron third on the emergency card for Howell primarily because the distance prevented him from being contacted in case of an emergency. Such an issue was not present while the parties resided in close proximity of their children's school in Grosse Pointe.

Testimony also established that Dr. Pierron and Ms. Pierron had a fairly amicable relationship before the school issue was raised. They were able to reach workable parenting time solutions. The decision to move the children to the Howell school district has been detrimental to that relationship as the parties have been entrenched in costly litigation for the last several months. The animosity and financial costs are clearly not in the best interests of the children.

This factor favors Dr. Pierron's request to keep the children in the Grosse Pointe school system.

Finally, in considering factor k, MCL 722.23(k), the circuit court determined that "[t]here was no evidence regarding domestic violence, and the issue is not relevant to the school issue," and with respect to factor *l*, MCL 722.23(*l*), the court found that there were no other relevant considerations and that "[t]he Court has addressed all major factors considered in this school decision issue."

In sum, the circuit court determined that factors b, c, d, e, h, and j favored plaintiff's request to keep the children enrolled in the Grosse Pointe Public Schools, and that the parties were equally situated with respect to factors a, f, g, and k. With respect to factor i, the court determined that because the children had never attended the Howell Public Schools, they had no factual basis to form a reasonable preference with respect to the change-of-school issue. The circuit court therefore ruled that defendant had "failed to establish by a preponderance of the evidence, much less the clear and convincing standard that it is in the best interests of the minor children to change their school district. The Pierron children shall remain enrolled in the Grosse Pointe school system until further order of the Court."

II

All custody orders must be affirmed on appeal unless the circuit court's findings were against the great weight of the evidence, the circuit court committed a palpable abuse of discretion, or the circuit court made a clear legal error on a major issue. MCL 722.28; *Fletcher v Fletcher*, 447 Mich 871, 876-877 (BRICKLEY, J.), 900 (GRIFFIN, J.); 526 NW2d 889 (1994); *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). The great weight of the evidence standard applies to all findings of fact; the circuit court's findings should be affirmed

unless the evidence clearly preponderates in the opposite direction. *Id.* at 705; *Sinicropi v Mazurek*, 273 Mich App 149, 155; 729 NW2d 256 (2006). In reviewing the circuit court's findings, we defer to the court's determination of witness credibility. *Id.* The abuse of discretion standard applies to the circuit court's discretionary rulings. *Vodvarka v Grasmeyer*, 259 Mich App 499, 507-508; 675 NW2d 847 (2003). A ruling concerning an important decision affecting the welfare of a child is such a discretionary ruling. A circuit court commits legal error "when it incorrectly chooses, interprets, or applies the law.' " *Id.* at 508 (citation omitted).

We review de novo questions concerning the interpretation and application of a statute. *Danse Corp v Madison Hts*, 466 Mich 175, 178; 644 NW2d 721 (2002). "The applicable burden of proof presents a question of law that is reviewed de novo on appeal." *FACE Trading Inc v Dep't of Consumer & Industry Services*, 270 Mich App 653, 661; 717 NW2d 377 (2006). Which party bears the burden of proof is also a question of law that we review de novo on appeal. *Pickering v Pickering*, 253 Mich App 694, 697; 659 NW2d 649 (2002).

III

The Child Custody Act, MCL 722.21 *et seq.*, "applies to all circuit court child custody disputes and actions, whether original or incidental to other actions." MCL 722.26(1). The purposes of the act are to promote the best interests of the child and to provide a stable environment for children that is free of unwarranted custody changes. *Thompson v Thompson*, 261 Mich App 353, 361 n 2; 683 NW2d 250 (2004); *Vodvarka,* 259 Mich App at 511. Once the circuit court has entered an order or judgment in a child custody action, that order or judgment may be modified or amended only "for proper

cause shown or because of change of circumstances . . . ." MCL 722.27(1)(c); see also *Spires v Bergman*, 276 Mich App 432, 444 n 4; 741 NW2d 523 (2007). Upon finding proper cause or a change in circumstances sufficient to revisit an existing custody order, the circuit court's "threshold determination . . . is whether an established custodial environment exists." *LaFleche v Ybarra*, 242 Mich App 692, 695-696; 619 NW2d 738 (2000). An established custodial environment exists "if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). Our Supreme Court has described an established custodial environment as "a custodial relationship of a significant duration in which [the child is] provided the parental care, discipline, love, guidance and attention appropriate to his age and individual needs; an environment in both the physical and psychological sense in which the relationship between the custodian and the child is marked by qualities of security, stability and permanence." *Baker v Baker*, 411 Mich 567, 579-580; 309 NW2d 532 (1981). Factors to be considered in determining whether an established custodial environment exists "include '[t]he age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship.' " *LaFleche*, 242 Mich App at 696, quoting MCL 722.27(1)(c). An established custodial environment may exist in more than one home, *Rittershaus v Rittershaus*, 273 Mich App 462, 471; 730 NW2d 262 (2007), and "can be established as a result of a temporary custody order, in violation of a custody order, or in the absence of a custody order," *Berger*, 277 Mich App at 707.

If the circuit court finds that an established custodial environment exists, then the circuit court "shall not modify or amend its previous judgments or orders or issue a new order so as to change the established

custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c); see also *Foskett v Foskett*, 247 Mich App 1, 6; 634 NW2d 363 (2001). This higher "clear and convincing evidence" standard also applies when there is an established custodial environment with both parents. *Id.* If, on the other hand, the court finds that no established custodial environment exists, then the court may change custody or enter a new order "if the party bearing the burden proves by a preponderance of the evidence that the change serves the child's best interests." *Id.* at 7; see also *Baker*, 411 Mich at 582.

IV

As an initial matter, we wish to make clear that defendant did not act illegally by moving the children's residence to Howell without first seeking the permission of the circuit court or the consent of plaintiff. The Legislature has declared that "a parent of a child whose custody is governed by court order shall not change a legal residence of the child to a location that is more than 100 miles from the child's legal residence at the time of the commencement of the action in which the order is issued." MCL 722.31(1). In other words, when a child's custody is governed by court order, neither parent may move that child's residence by more than 100 miles without first obtaining permission from the court or consent from the other party. *Bowers v VanderMeulen-Bowers*, 278 Mich App 287, 293; 750 NW2d 597 (2008). Implicit in MCL 722.31(1), however, is that a custodial parent *may* move a child's residence by *less* than 100 miles without first obtaining permission from the court or consent from the other party. See *id.* The undisputed evidence in this case established

that Howell is roughly 60 miles from defendant's former home in Grosse Pointe Woods. We therefore conclude that defendant was free to relocate the children's residence to Howell without first seeking the permission of the circuit court or the consent of plaintiff. See MCL 722.31(1).

V

But the mere fact that one parent may be entitled to move a child's residence by less than 100 miles without permission of the court or consent of the other parent does not relieve the circuit court of its obligation "to resolve disputes regarding important decisions affecting the welfare of a child according to the best interests of the child." *Bowers*, 278 Mich App at 296. Indeed, a relocating parent who shares legal custody with another parent does not have the authority to unilaterally make important decisions affecting the welfare of the child, even if the relocating parent is the primary physical custodian. *Lombardo v Lombardo*, 202 Mich App 151, 159-160; 507 NW2d 788 (1993). This is because when parents share joint legal custody—as plaintiff and defendant did in this case—they also "share decision-making authority as to the important decisions affecting the welfare of the child." MCL 722.26a(7)(b). A decision concerning the child's schooling and education is just such an important decision affecting the welfare of the child. *Bowers*, 278 Mich App at 296; *Shulick v Richards*, 273 Mich App 320, 327; 729 NW2d 533 (2006) (stating that "educational decisions are clearly 'important decisions affecting the welfare of' the children").[3] Therefore, parents with joint custody must

---

[3] Other "important decisions affecting the welfare of the child" within the meaning of MCL 722.26a(7)(b) include decisions concerning a child's

agree concerning where their children will attend school. *Bowers*, 278 Mich App at 296; *Lombardo*, 202 Mich App at 159.

At times, of course, joint legal custodians will not be able to agree on important decisions, such as schooling, that affect their children's welfare. Thus, "where the parents as joint custodians cannot agree on important matters such as education, it is the court's duty to determine the issue in the best interests of the child." *Id.*; see also *Bowers*, 278 Mich App at 297. The court must do so by holding an evidentiary hearing and considering the relevant best-interest factors contained in MCL 722.23. *Lombardo*, 202 Mich App at 160. We refer to such an evidentiary hearing, held for the purpose of deciding an important issue affecting the welfare of the child, as a "*Lombardo* hearing." During a *Lombardo* hearing, the circuit court "must consider, evaluate, and determine each of the factors listed at MCL 722.23" for the purpose of "resolving disputes concerning 'important decisions affecting the welfare of the child' that arise between joint custodial parents." *Lombardo*, 202 Mich App at 160.

In general, a *Lombardo* hearing will involve one parent seeking to change the child's position with respect to an important issue, and another parent seeking to maintain the child's status quo with respect to that issue. For example, in the present case, defendant sought to change the minor children's school district by enrolling them in the Howell Public Schools, but plaintiff sought to maintain the status quo with regard to the issue of education by keeping the children enrolled in the Grosse Pointe Public Schools. When this

---

medical care, religious upbringing, and discipline. *Shulick*, 273 Mich App at 327; *Fisher v Fisher*, 118 Mich App 227, 232-233; 324 NW2d 582 (1982).

occurs, and the proposed change would not alter the child's established custodial environment, the proponent of the change has the burden of proving by a preponderance of the evidence that the change would be in the child's best interest. However, when the proposed change would alter the child's established custodial environment, the proponent of the change must prove by clear and convincing evidence that the change would be in the child's best interest. See MCL 722.27(1)(c).

Following the *Lombardo* hearing in this case, the circuit court first determined that an established custodial environment existed with both plaintiff and defendant at the time that plaintiff brought his motion. The testimony established that although defendant had primary physical custody and the children lived with her the majority of the time, the children did look to both of their parents "for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). The testimony further showed that the children had permanent, secure, and lasting relationships with both plaintiff and defendant. *Baker*, 411 Mich at 579-580. Although the children's relationship with their father may have become strained after the change-of-school issue arose, and even though the evidence suggested that the children were not as close with their father as they were with their mother, the circuit court properly found that an established custodial environment existed in both parents' homes. See *Rittershaus*, 273 Mich App at 471. The circuit court's finding in this regard was not contrary to the great weight of the evidence. MCL 722.28.

The circuit court erred, however, when it found that the proposed change of school districts would alter the children's established custodial environment. We first note that the proposed change of school districts would not have changed the actual custody arrangements in

this case. Defendant has at all times had primary physical custody of the children since the parties' divorce, and plaintiff has seen and interacted with the children only during his parenting time. Enrollment of the children in the Howell Public Schools would not alter this arrangement in any way—defendant would still maintain primary physical custody, and plaintiff would still be free to exercise liberal and reasonable parenting time just as he had done before the change of school districts.

We do acknowledge that any ultimate enrollment of the children in the Howell Public Schools might require minor modifications to plaintiff's parenting time schedule. When a modification in parenting time would amount to a change of the established custodial environment, it should not be granted unless the circuit court "is persuaded by clear and convincing evidence that the change would be in the best interest of the child." *Brown v Loveman*, 260 Mich App 576, 595; 680 NW2d 432 (2004); see also *Stevenson v Stevenson*, 74 Mich App 656, 659; 254 NW2d 337 (1977). But the proposed change of school districts in this case would require only minor modifications to plaintiff's parenting time, and therefore would not affect the children's established custodial environment with plaintiff. As this Court has implicitly recognized on several occasions, not all modifications of one party's parenting time amount to a change of the established custodial environment that exists with that party. See *Brown*, 260 Mich App at 595; *Stevens v Stevens*, 86 Mich App 258, 270; 273 NW2d 490 (1978). Nor do all geographic moves necessarily alter a child's established custodial environment. *Brown*, 260 Mich App at 590 (observing that "it is possible to have a domicile change that is more than one hundred miles away from the original residence without having a change in the established custodial environment"); *DeGrow v DeGrow*, 112 Mich App 260, 267; 315

NW2d 915 (1982) (stating that, where the children resided principally with their mother in Michigan before moving with her to Ohio, the children's "custodial environment was not disturbed by the move from Michigan to Ohio"). The mere 60-mile distance between Howell and Grosse Pointe Woods would not be a substantial barrier to plaintiff's continued parenting time, and the mere change of school districts would not necessarily alter or materially reduce plaintiff's opportunity to exercise visitation with the minor children.

Since the divorce, defendant has always been the primary physical custodian of the minor children. In contrast, plaintiff has seen the children and exercised parenting time only when his personal and work schedules have accommodated it. Enrolling the children in the Howell Public Schools quite simply would not alter this arrangement. Plaintiff would still be free to exercise parenting time with the children after school and on weekends and holidays. Such a schedule would not be materially different than plaintiff's current parenting time schedule. We cannot conclude that enrollment of the children in the Howell Public Schools would so alter plaintiff's parenting time schedule as to change the established custodial environment. Consequently, defendant was merely required to prove by a preponderance of the evidence that the proposed change of school districts would be in the children's best interests.[4] The circuit court committed a

---

[4] We acknowledge that in *Taylor v Taylor*, unpublished opinion per curiam of the Court of Appeals, issued July 29, 2008 (Docket No. 281555), at 4, a panel of this Court concluded that "the clear and convincing standard applies to all disputes regarding education where the parties have joint legal custody," irrespective of whether the court's ultimate decision would alter the established custodial environment. In support of this proposition, the *Taylor* panel cited *Lombardo*, 202 Mich App at 159, which in turn cited MCL 722.27(1)(c). However, MCL 722.23(1)(c) clearly states that the clear and convincing evidence standard is applicable only when the circuit court's decision would "change the established custodial environment of a

clear legal error on a major issue by requiring defendant to prove by clear and convincing evidence that the proposed change of school districts would be in the children's best interests. MCL 722.28.

VI

The circuit court also erred in several respects, both legally and factually, in its consideration of the statutory best-interest factors of MCL 722.23.

After making the abovementioned findings concerning the children's established custodial environment, and upon observing that there was "no prior court order addressing where the Pierron children would attend school,"[5] the circuit court proceeded to consider whether changing the children's school district would be in their best interests according to the statutory best-interest factors of MCL 722.23.

As noted earlier, at a *Lombardo* hearing, the circuit court "must consider, evaluate, and determine each of the factors listed at MCL 722.23" for the purpose of "resolving disputes concerning 'important decisions affecting the welfare of the child' that arise between joint custodial parents." *Lombardo*, 202 Mich App at 160. MCL 722.23 provides:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

---

child . . . ." Accordingly, the *Taylor* panel erred when it held that the clear and convincing evidence standard should be applied irrespective of whether the court's ultimate decision would change the established custodial environment. We are not bound by the unpublished opinion in *Taylor*, which lacks precedential effect under the rule of stare decisis. MCR 7.215(C)(1).

[5] No previous order had been issued in this case concerning the children's schooling, and as the circuit court properly observed, "[u]ntil the 2007-2008 school year, the parents were in agreement that the children would attend the Grosse Pointe public school system."

(a) The love, affection, and other emotional ties existing between the parties involved and the child.

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute.

Unlike the practice required for general change-of-custody hearings, during *Lombardo* hearings the court must narrowly focus its consideration of each best-interest factor on the specific "important decision[]

affecting the welfare of the child"[6] that is at issue. Following the *Lombardo* hearing in this case, the circuit court concluded that factors b, c, d, e, h, and j favored plaintiff's request to keep the children enrolled in the Grosse Pointe Public Schools, and that the parties were equally situated with respect to factors a, f, g, and k. The court refused to consider the children's preferences under factor i. We now address seriatim the court's findings with respect to the best-interest factors.

We first conclude that the court's finding that the parties were equally situated with respect to factor a, MCL 722.23(a), was against the great weight of the evidence presented at the *Lombardo* hearing. MCL 722.28. While the testimony established that both plaintiff and defendant were equally capable of providing love and affection for the minor children, this evidence was relevant to factor b rather than to factor a. The evidence relevant to factor a demonstrated that the children's relationship and bond with plaintiff had severely deteriorated since the change of school districts was proposed. As the circuit court observed, "Andrew has exhibited resistance to the Grosse Pointe school system, argued with his father, swore at him, and even ran away from school. His resentment toward his father suggests that the emotional ties between him and his father are strained." In addition, the evidence clearly established that the children had already grown emotionally attached to the idea of living with their mother in Howell and attending the Howell Public Schools. Factor a favored defendant's request to enroll the children in the Howell Public Schools.

In concluding that factor b, MCL 722.23(b), favored plaintiff's request to keep the children enrolled in the Grosse Pointe Public Schools, the circuit court commit-

---

[6] MCL 722.26a(7)(b).

ted clear legal error on a major issue by failing to narrowly focus its consideration of the factor to the specific important decision affecting the welfare of the child that was pending before it. MCL 722.28. As the circuit court properly recognized, both plaintiff and defendant were equally capable of providing love and affection for the minor children, and the proposed change of school districts would not have affected either parent's ability to do so. But the court ultimately decided that factor b favored plaintiff's request to keep the children enrolled in the Grosse Pointe Public Schools because plaintiff regularly took the children to church in the Grosse Pointe area. It is true that plaintiff regularly took the children to a Methodist church in Grosse Pointe and that defendant did not regularly attend church with the children. However, issues concerning the children's church attendance were simply not relevant to the particular change-of-school issue pending before the court during the *Lombardo* hearing. There was no evidence that the proposed change of school districts would affect plaintiff's ability to take the children to church in Grosse Pointe—presumably on Sundays when neither the Grosse Pointe Public Schools nor the Howell Public Schools would be in session. The evidence presented indicated that the parties were equally situated with respect to factor b.

The circuit court committed further legal error on a major issue by failing to narrowly focus its consideration of factor c, MCL 722.23(c), to the specific important decision affecting the welfare of the children that was pending before it. MCL 722.28. We acknowledge that plaintiff earns far more money than defendant and is therefore better able to provide the children with food, clothing, and medical care *in general*. However, this disparity in income had nothing to do with the proposed change of school districts. There was simply

no showing that enrollment of the children in the Howell Public Schools would affect the parties' respective abilities to provide for the children. Indeed, as the circuit court recognized, the parties had stipulated that the children would continue to see the same doctors and dentists and that plaintiff would remain involved in the children's health care. Moreover, the children already principally resided with defendant, and there was no showing that plaintiff's child support payments were insufficient to allow defendant to provide for the children's needs. It goes without saying that any change of school districts would not have affected plaintiff's obligation to pay child support to defendant. In the limited context of the specific change-of-school issue pending before the court, the parties were equally situated with respect to factor c.

We agree with the circuit court that factor d, MCL 722.23(d), favored plaintiff's request to keep the children enrolled in the Grosse Pointe Public Schools. The children's status quo educational environment was the Grosse Pointe school system. The circuit court properly focused its consideration of factor d on the specific change-of-school decision that was pending before it, and the court's findings of fact concerning this factor were not against the great weight of the evidence. MCL 722.28.

Next, we conclude that the circuit court committed legal error on a major issue by failing to narrowly focus its consideration of factor e, MCL 722.23(e), to the specific change-of-school decision pending before it. MCL 722.28. The circuit court found that factor e favored plaintiff's request to keep the children enrolled in the Grosse Pointe Public Schools because the proposed change of school districts would hamper the children's relationship with their paternal grandpar-

ents. While defendant's move to Howell may have already hampered the relationship between the children and their paternal grandparents, the proposed change of school districts, itself, would not further affect this relationship. Nor would the proposed change of school districts, itself, further the children's relationship with defendant's sister or mother. The parties were equally situated with respect to factor e.

We agree with the circuit court that, within the context of the particular change-of-school issue pending before it, the parties were equally situated with respect to factor f, MCL 722.23(f), and factor g, MCL 722.23(g). The moral fitness and health of the parties had no direct bearing on whether the children should remain in the Grosse Pointe Public Schools or be enrolled in the Howell Public Schools.

We conclude that the circuit court's finding with respect to factor h, MCL 722.23(h), was against the great weight of the evidence presented at the *Lombardo* hearing. MCL 722.28. The court determined, following extensive testimony, that the Grosse Pointe Public Schools and the Howell Public Schools were rated equally, were approximately equal in quality, and that both school districts offered numerous educational, social, athletic, and recreational opportunities. The court also determined that the crime rates surrounding the two school districts were roughly equivalent. It is true that Madeline had performed well in the Grosse Pointe Public Schools. However, the evidence established that Madeline was bright and curious, and that it was therefore just as likely that she would perform equally as well in the Howell Public Schools. It is also true that Andrew had a private tutor in the Grosse Pointe area and that he struggled in school at times. However, the evidence established the availability of

similar tutoring and other educational programs for students in the Howell area. There was simply no showing that Andrew could not receive the same type of specialized tutoring in Howell that he had received in the Grosse Pointe area or that his education and development would suffer in any way if enrolled in the Howell Public Schools. Although it is likely true that plaintiff would not be able to attend as many of the children's daytime school activities if the children were enrolled in the Howell Public Schools, he would still be able to attend after-school and evening school events and programs.

Also with respect to factor h, we conclude that the circuit court disregarded certain important evidence concerning Andrew's likelihood to prosper in the Howell Public Schools. Considerable testimony established that Andrew had been either bullied or teased in the Grosse Pointe Public Schools. Whether Andrew was actually "bullied," as suggested by defendant, or "teased," as suggested by his tutor, is not material to this calculus. What is material is that Andrew had expressed a renewed interest in school and education upon learning of the proposed change of school districts. Defendant attributed this to the fact that Andrew, who suffered from low self-esteem, had been taunted in the Grosse Pointe Public Schools regarding the fact that he had repeated a grade. Defendant believed that "it would do Andrew a world of good to be in an environment where nobody knows that he was held back" and that this was "the essential source of [Andrew's] low self esteem." Defendant also believed that the relaxed environment of the Howell Public Schools—in contrast to the extreme competitiveness of the Grosse Pointe Public Schools—would benefit the minor children. The circuit court wholly failed to consider defendant's testimony in this regard.

The circuit court's determination that factor h, MCL 722.23(h), favored plaintiff's request to keep the children enrolled in the Grosse Pointe Public Schools was against the great weight of the evidence. MCL 722.28. With respect to Andrew, factor h clearly favored defendant's request to enroll him in the Howell Public Schools. And with respect to Madeline, the parties were equally situated under factor h.

We next conclude that the circuit court clearly erred on a major legal issue when it refused to consider the reasonable preferences of the children under factor i, MCL 722.23(i). With respect to factor i, the circuit court observed that "Dr. Pierron and Ms. Pierron both concede that the children would prefer the Howell school system." Nonetheless, the court determined that because the children had never attended the Howell Public Schools, they had no factual basis to form a reasonable preference with respect to the change-of-school issue. Accordingly, the circuit court refused to consider the preference of the children.

Under factor i, the circuit court "*must* consider-... the 'reasonable preference of the child, if the court deems the child to be of sufficient age to express preference.' " *Treutle v Treutle*, 197 Mich App 690, 694; 495 NW2d 836 (1992), quoting MCL 722.23(i) (emphasis added). At the time of the *Lombardo* hearing, Andrew was 13 years old and Madeline was 8 years old. The children were consequently "of sufficient age to express preference" within the meaning of MCL 722.23(i). *Bowers v Bowers*, 190 Mich App 51, 56; 475 NW2d 394 (1991) (holding that a six-year-old child is old enough to have his preference given some weight under factor i).[7] Thus, assuming that the children's

---

[7] We recognize that *Treutle* and *Bowers* both involved full change-of-custody hearings. But we perceive no reason why the law concerning

preferences were "reasonable," the circuit court was required to take them into consideration in ruling on the choice-of-school issue.

The circuit court found, and plaintiff argues on appeal, that because the children had never attended the Howell Public Schools, any preference that they might have had for the Howell Public Schools could not have been "reasonable." We disagree. MCL 722.23(i) merely requires that the child's preference be "reasonable." It is true that the word "reasonable" is susceptible to multiple meanings. See *People v Gregg*, 206 Mich App 208, 213; 520 NW2d 690 (1994). But we cannot conclude that by including the word "reasonable" in MCL 722.23(i), the Legislature intended to require that a child's preference be accompanied by detailed thought or critical analysis. Instead, we think it clear that by including the word "reasonable" in the language of MCL 722.23(i), the Legislature simply intended to exclude those preferences that are arbitrary or inherently indefensible.

In this case the children had defensible reasons for preferring the Howell Public Schools to the Grosse Pointe Public Schools. It made eminent sense for the children to prefer to attend school in the community where they lived with their primary custodial parent. In addition, the evidence showed that Andrew was unhappy and struggling in the Grosse Pointe Public Schools and that he would have a greater potential for success in a new educational environment where he could effectively "start over." And although Madeline was apparently not as unhappy in the Grosse Pointe Public Schools as was Andrew, her preference for the Howell Public Schools was not unreasonable merely

factor i should be applied any differently in the context of *Lombardo* hearings than in the context of full change-of-custody hearings.

because it was influenced by her feelings and her emotional attachment to defendant. See *Carson v Carson*, 156 Mich App 291, 300; 401 NW2d 632 (1986).

The minor children were of sufficient age to express their preferences with respect to the change-of-school issue, *Bowers*, 190 Mich App at 56, and we conclude that their preferences were "reasonable" within the meaning of MCL 722.23(i). The circuit court clearly erred on a major legal issue when it failed to consider the children's preference for enrollment in the Howell Public Schools. MCL 722.28. With respect to both Andrew and Madeline, factor i favored defendant's request to enroll the children in the Howell Public Schools.

While we disagree with much of the circuit court's unnecessary and sprawling discussion concerning factor j, MCL 722.23(j), we do agree with the court's ultimate finding that factor j favored plaintiff's request to keep the children enrolled in the Grosse Pointe Public Schools. Quite simply, keeping the children enrolled in the Grosse Pointe Public Schools would increase the likelihood that the children would maintain stronger and closer ties with their father. Factor j consequently favored plaintiff's request to keep the children enrolled in the Grosse Pointe Public Schools.

Finally, we agree with the circuit court that the parties were equally situated with respect to factor k, MCL 722.23(k), and factor *l*, MCL 722.23(*l*). There were no allegations of domestic violence in this case, and no other relevant considerations were identified that would have affected the circuit court's ultimate decision on the change-of-school issue.

As noted previously, defendant, as the proponent of the proposed change of school districts, was required to prove by a preponderance of the evidence that removing the children from the Grosse Pointe Public Schools and

enrolling them in the Howell Public Schools would be in their best interests. We note that "the statutory best interests factors need *not* be given equal weight." *McCain v McCain*, 229 Mich App 123, 131; 580 NW2d 485 (1998) (emphasis in original). Neither the circuit court nor this Court is required to "mathematically assess equal weight to each of the statutory factors." *Id.* Nor does a finding regarding one factor necessarily countervail the findings regarding the other factors. *Winn v Winn*, 234 Mich App 255, 263; 593 NW2d 662 (1999). In light of our analysis above, we conclude that defendant likely satisfied her burden of proof on the change-of-school issue in this case. *Heid v Aaasulewski (After Remand)*, 209 Mich App 587, 593; 532 NW2d 205 (1995) (observing that "a finding of equality or near equality on the factors set out in MCL 722.23; MSA 25.312(3) will not necessarily prevent a party from satisfying the burden of proof"). Moreover, we cannot omit mention that it is certainly in the children's best interests to attend school in the community where they live with their primary physical custodian. When all else is equal, "[t]he overwhelmingly predominant factor is, as always, the welfare of the child," *Winn*, 234 Mich App at 263, and, in the end, we are "duty-bound to examine all the criteria in the ultimate light of the child's best interests," *Heid*, 209 Mich App at 596. Lastly, as both parties acknowledged during the *Lombardo* hearing, the children clearly preferred the Howell Public Schools to the Grosse Pointe Public Schools. While it is true that "[t]he child's preference does not automatically outweigh the other factors," *Treutle*, 197 Mich App at 694, in close cases, the children's reasonable preference may be the ultimate determining factor, see *Lustig v Lustig*, 99 Mich App 716, 731; 299 NW2d 375 (1980).

We conclude that the circuit court committed legal errors on a number of major issues and made several findings of fact that were against the great weight of the

evidence. MCL 722.28. We may not simply remand for entry of an order directing that the minor children be enrolled in the Howell Public Schools because, on a finding of error, "[d]e novo review of the ultimate custodial disposition is inappropriate." *Fletcher*, 447 Mich at 889. Therefore, we vacate the circuit court's order directing that the minor children remain enrolled in the Grosse Pointe Public Schools and remand for reevaluation of the change-of-school issue consistent with this opinion. See *id*. On remand, the court should consider up-to-date information in its determination of the choice-of-school issue, including, but not necessarily limited to, the current and reasonable preferences of the minor children and any other changes that may have arisen in the interim period. See *id*.

VII

This is not the end of the inquiry, however. Regardless of how the circuit court decides the change-of-school issue, it might well be required to also ultimately decide a change-of-custody issue.

We first consider what may happen if the circuit court determines on remand that the minor children should remain enrolled in the Grosse Pointe Public Schools. Because defendant remains the primary physical custodian and now lives in Howell, keeping the minor children enrolled in the Grosse Pointe Public Schools would be tantamount to a de facto change of physical custody from defendant to plaintiff. Such an effective change of custody would necessitate an additional review of the statutory best-interest factors of MCL 722.23 to determine whether plaintiff could prove, by clear and convincing evidence, that the change of custody would be in the children's best interests. See *Brown*, 260 Mich App at 590-591. If the court first

determines on remand that it is in the children's best interests to remain in the Grosse Pointe Public Schools, and if plaintiff is then able to carry his burden of establishing that a change in physical custody from defendant to plaintiff would be in the children's best interests, the circuit court would be free to make plaintiff the children's primary physical custodian. On the other hand, if the court concludes on remand that it is in the children's best interests to remain in the Grosse Pointe Public Schools, but plaintiff is then unable to meet his burden of proving that a change in physical custody from defendant to plaintiff would be in the children's best interests, the court may realistically have "no alternative but to determine which parent shall have sole custody of the children." *Fisher*, 118 Mich App at 233.

Of course, the circuit court may ultimately conclude on remand that defendant has satisfied her burden of proving that it is in the best interests of the children to attend the Howell Public Schools. In such a case, it is possible that plaintiff may move for a change of custody. To do so, plaintiff would first have to demonstrate "proper cause" or a "change of circumstances" sufficient to reopen the circuit court's prior custody orders. MCL 722.27(1)(c); *Vodvarka*, 259 Mich App at 508. We note that defendant's 60-mile move to Howell with the children would not, by itself, constitute proper cause or a sufficient change in circumstances to revisit the court's earlier custody orders. See *Sehlke v VanDer-Maas*, 268 Mich App 262, 263; 707 NW2d 603 (2005), rev'd in part on other grounds 474 Mich 1053 (2006). However, defendant's 60-mile move to Howell with the children, coupled with the accompanying change in the children's school environment, would likely constitute a sufficient change of circumstances to warrant consideration of a change of custody. *Sinicropi*, 273 Mich App at

177-178. Assuming that plaintiff could establish proper cause or a change of circumstances, the circuit court would then be required to hold a full change-of-custody hearing and to consider the statutory best-interest factors of MCL 722.23. Because any change of custody sought by plaintiff in this regard would alter the children's established custodial environment with defendant, plaintiff would be required to prove by clear and convincing evidence that the requested change of custody would be in the children's best interests. MCL 722.27(1)(c); *Foskett*, 247 Mich App at 6.[8]

VIII

Lastly, we affirm the circuit court's refusal to consider the merits of defendant's request for attorney fees. Defendant first raised her request for attorney fees before the circuit court by way of her motion for reconsideration. A circuit court does not err by declining to consider legal arguments raised for the first time in a motion for reconsideration. *Charbeneau v Wayne Co Gen Hosp*, 158 Mich App 730, 733; 405 NW2d 151 (1987). We perceive no error with respect to this issue.

IX

We affirm the circuit court's refusal to consider the merits of defendant's request for attorney fees. We vacate the circuit court's order directing that the minor

---

[8] We can envision a scenario in which the circuit court might first determine on remand that it is in the best interests of the children to attend the Howell Public Schools, but subsequently determine after a full change-of-custody hearing that plaintiff has carried his burden of proving that a change of custody from defendant to plaintiff would be in the children's best interests. If this occurs, the circuit court may again have "no alternative but to determine which parent shall have sole custody of the children." *Fisher*, 118 Mich App at 233.

children remain enrolled in the Grosse Pointe Public Schools and remand the case. On remand, the circuit court shall first determine whether defendant has proven, by a preponderance of the evidence, that it is in the children's best interests to attend the Howell Public Schools. After making this determination, the court shall undertake further proceedings, if necessary, which are consistent with this opinion.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.