# STATE OF MICHIGAN

# COURT OF APPEALS

---

AMBER ELIZABETH ADAMS,

        Plaintiff-Appellant,

v

STEPHEN CHARLES ADAMS, II,

        Defendant-Appellee.

UNPUBLISHED
December 6, 2018

No. 343170
Wayne Circuit Court
LC No. 17-101934-DM

---

Before: SHAPIRO, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

Plaintiff appeals as of right the judgment of divorce pertaining to the spousal support and child custody provisions. We affirm in part, vacate in part, and remand this matter for the trial court to make explicit factual findings regarding the best-interest factors in relation to custody and parenting time only, and for entry of an amended judgment of divorce.

On appeal, plaintiff argues that the trial court clearly erred when it failed to consider the spousal support factors and ordered no spousal support, and when it failed to make findings on the child custody best-interest factors, failed to interview the children, failed to independently determine the established custodial environment, and awarded defendant primary parenting time of the parties' youngest daughter, SA. We agree to the extent that the trial court erred in failing to make explicit findings regarding the best-interest factors only. We disagree regarding the remainder of plaintiff's arguments.

## I. SPOUSAL SUPPORT

Although the trial court clearly erred when it failed to address the spousal support factors, the trial court's failure to award plaintiff spousal support did not affect her substantial rights because plaintiff was not entitled to spousal support.

Plaintiff did not raise an argument in favor of spousal support over the course of the three-day bench trial, nor did she address the spousal support factors in the lower court. Therefore, this issue is not preserved for appeal. See *Loutts v Loutts*, 298 Mich App 21, 23; 826 NW2d 152 (2012). Thus, this issue is reviewed for plain error affecting substantial rights. *Rivette v Rose-Molina*, 278 Mich App 327, 328; 750 NW2d 603 (2008). "To avoid forfeiture under the plain-error rule, three requirements must be met: (1) an error must have occurred; (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights." *Id*.

-1-

at 328-329 (quotation marks and citations omitted). "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

The Michigan statute governing spousal support favors a case-by-case approach to determining spousal support:

> Upon entry of a judgment of divorce or separate maintenance, if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party and any children of the marriage who are committed to the care and custody of either party, the court may also award to either party the part of the real and personal estate of either party and spousal support out of the real and personal estate, to be paid to either party in gross or otherwise as the court considers just and reasonable, after considering the ability of either party to pay and the character and situation of the parties, and all the other circumstances of the case. [MCL 552.23(1).]

"The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished; spousal support is to be based on what is just and reasonable under the circumstances of the case." *Berger v Berger*, 277 Mich App 700, 726; 747 NW2d 336 (2008). Divorcing parties are entitled to individual consideration of the law and facts applicable to their case. *Loutts*, 298 Mich App at 30.

A trial court should take into account the following factors when deciding whether to award spousal support:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on a party's financial status, and (14) general principles of equity. [*Olson v Olson*, 256 Mich App 619, 629; 671 NW2d 64 (2003).]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Korth v Korth*, 256 Mich App 286, 289; 662 NW2d 111 (2003). It need only make factual findings on the relevant factors. *Sparks v Sparks*, 440 Mich 141, 159; 485 NW2d 893 (1992). The failure to specifically state findings regarding each factor does not require reversal when this Court's "review of the record indicates that we would not have reached a different result." *Lee v Lee*, 191 Mich App 73, 80; 477 NW2d 429 (1991).

Plaintiff made several requests for spousal support in the lower court, including her initial complaint for "separate maintenance," and her motion to maintain the status quo. However, at the time that plaintiff made these motions, she was still living in the marital home. Defendant was awarded possession of the marital home, and plaintiff moved into an apartment with her

then-boyfriend. At the bench trial, spousal support was not discussed. The court merely asserted, "No spousal support in this matter." The judgment of divorce awarded no spousal support to either party. Thus, the trial court failed to consider the relevant spousal support factors by failing to provide any meaningful analysis. The trial court should have considered all of the spousal support factors relevant to the case. See *Korth*, 256 Mich App at 289. Nevertheless, reversal is not required because the trial court's ultimate decision to deny plaintiff spousal support was fair and equitable, and a review of the record does not establish a different result. See *Berger*, 277 Mich App at 727; *Lee*, 191 Mich App at 80. Plaintiff failed to establish that this plain error affected her substantial rights because she cannot establish that she was entitled to spousal support. See *Rivette*, 278 Mich App at 328.

The parties were married for approximately 20 years, and had a tumultuous relationship. Plaintiff called the police on defendant for domestic disputes "quite a few times," and each party was involved in extramarital affairs during the marriage. Defendant was arrested on June 7, 2015, and plaintiff sought a personal protection order against defendant because he picked plaintiff up, and threw her to the ground. The parties are both over 40 years old, and have no physical health concerns, but each have mental health issues. Plaintiff was diagnosed with agoraphobia with panic disorder, posttraumatic stress disorder (PTSD), mixed personality disorder, anxiety, and depression. The court noted that plaintiff appeared to be doing much better after her medication was reviewed by her doctor. Defendant had a medical marijuana card for his back, and was diagnosed with situational depression. He admitted to committing self-harm in the past. Defendant was awarded the marital home, but he was responsible for, and could afford, the monthly $730 house payment.

Both parties were currently working. Plaintiff "rarely" worked during the marriage, and only had a "handful of jobs." Although plaintiff was a stay-at-home mother for the majority of the marriage, plaintiff currently worked 20 to 25 hours at Kroger, making $9.75 each hour. She occasionally worked more hours. She received food stamps, and was on Medicaid. Defendant was employed full time, making $19 each hour. Plaintiff was responsible for supporting the parties' eldest daughter, AA, defendant supported SA, and child support was awarded to each party pursuant to uniform child support orders. At the time of the last date of the bench trial, plaintiff testified that she and her boyfriend were no longer together, he moved out of their apartment, and she would have to get financial help from her family to maintain her apartment and expenses.

Plaintiff's main argument on appeal is that defendant should be ordered to pay her spousal support because he makes $10 more each hour than plaintiff. Her argument seemingly rests on the "equitable principles" spousal support factor. See *Olson*, 256 Mich App at 629. This slight disparity in income does not outweigh the otherwise equal outcome of the other relevant factors. Plaintiff is not impoverished by a lack of spousal support from defendant. Rather than asserting that she needed spousal support to cover her expenses, she testified that she would receive financial support from her family for as long as she needed. If her family stopped supporting her, she would get a second job and work more hours. Therefore, plaintiff cannot establish that she was entitled to spousal support, and the trial court's failure to award her spousal support was not a plain error that affected her substantial rights.

## II. CHILD CUSTODY

Plaintiff also argues that the trial court erred in making its custody determination regarding SA because it did not make explicit findings regarding each best-interest factor, it did not interview the children, it did not make an independent determination of the established custodial environment, and the award of primary parenting time to defendant was not in SA's best interests. We agree that the trial court erred when it failed to make explicit factual findings regarding the best-interest factors in relation to custody and parenting time only.

Pursuant to MCL 722.28, this Court must affirm a custody order on appeal "unless the circuit court's findings were against the great weight of the evidence, the circuit court committed a palpable abuse of discretion, or the circuit court made a clear legal error on a major issue." *Pierron v Pierron*, 282 Mich App 222, 242; 765 NW2d 345 (2009) (*Pierron I*), aff'd by *Pierron v Pierron*, 486 Mich 81; 782 NW2d 480 (2010) (*Pierron II*) (citations omitted). Under the great weight of the evidence standard, this Court must affirm the trial court's findings "unless the evidence clearly preponderates in the opposite direction." *Pierron I*, 282 Mich App at 242-243. This Court defers to the credibility determinations made by the trial court. *Id*. at 243. The abuse of discretion standard is applied to the trial court's discretionary rulings, including to whom custody is granted. *Berger*, 277 Mich App at 705. An abuse of discretion occurs when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. *Mitchell v Mitchell*, 296 Mich App 513, 522; 823 NW2d 153 (2012). This Court reviews questions of law for clear legal error, which occurs when the trial court errs in its choice, interpretation, or application of the law. *Sturgis v Sturgis*, 302 Mich App 706, 710; 840 NW2d 408 (2013). Whether an established custodial environment exists is a question of fact that this Court must affirm unless the trial court's finding is against the great weight of the evidence. MCL 722.28; *Berger*, 277 Mich App at 706. A trial court's decision regarding parenting time will not be reversed unless the trial court made findings of fact against the great weight of the evidence, committed a palpable abuse of discretion, or committed clear legal error. MCL 722.28; *Mauro v Mauro*, 196 Mich App 1, 4; 492 NW2d 758 (1992).

All custody disputes are to be resolved in the child's best interests, according to the factors set forth in MCL 722.23. *Demski v Petlick*, 309 Mich App 404, 446; 873 NW2d 596 (2015). These factors are:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.

> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

A. FAILURE TO STATE FINDINGS REGARDING EACH BEST INTEREST FACTOR

Plaintiff argues on appeal that the trial court erred when it did not place any findings of fact or conclusions of law on the record regarding the best-interest factors, besides noting that the parties had a dysfunctional relationship, were incapable of communicating, and had a history of domestic violence. The trial court must consider and explicitly state its findings of fact and conclusions regarding each factor on the record, and failure to do so constitutes error requiring reversal. *Rittershaus v Rittershaus*, 273 Mich App 462, 475; 730 NW2d 262 (2007). However, "[t]hese findings and conclusions need not include consideration of every piece of evidence entered and argument raised by the parties. [ ] [T]he record must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's rulings." *Id*. The trial court does not need to give equal weight to each factor, but rather, may consider the relative weight of the factors as appropriate to the given circumstances. *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006).

At the beginning of the bench trial, the court noted that it would rely on the report of the Family Assessment Mediation and Education (FAME) Department and testimony in making its decision. During plaintiff's testimony, the court directed plaintiff to the best-interest portion of the FAME report, and specifically addressed each factor with plaintiff. The report indicated that

there was a strong bond with both parents pursuant to factor (a). Factor (b), according to the report, did not favor either party because the parties lacked the ability to make sound decisions regarding the children. The parties had a criminal history, a history of Child Protective Services (CPS) investigations, and engaged in inappropriate behavior that affected their children. Their history of domestic disputes and affairs was also considered for factor (f). The court noted plaintiff's inconsistent mental health diagnosis in relation to factor (g), but asserted that plaintiff appeared to be doing much better. The court noted that it was in receipt of the confidential reports of the children's interviews conducted by FAME, and considered them in relation to factor (i). Regarding the parties' history of domestic violence in relation to factor (k), the court read from the FAME report, which indicated that the children needed more structure and stability due to the parties' lack of foresight by injecting the children into adult matters, and that the parties needed to be more cognizant of the fact that their verbalizations and physical displays of aggression could lead to negative consequences for the children. The recommendation of the FAME report was joint legal and physical custody of the children, with a primary residence with defendant. Thus, the court addressed and considered all of the best-interest factors during the bench trial.

In rendering its decision, the court adopted all of the information in the FAME report listed under the best-interest factors. The court noted that the parties' relationship was dysfunctional, and they could not communicate with each other. Based on the testimony, FAME report, and CPS investigation information in the FAME report, the court determined that the parties' inability to coparent was detrimental to the children. Thus, the court awarded sole physical and legal custody of SA to defendant.

The trial court provided that it adopted the FAME report regarding the best-interest factors. This is insufficient to meet the requirement that the court provide explicit findings of fact and conclusions of law regarding each best-interest factor and amounts to error requiring reversal. See *Rittershaus*, 273 Mich App at 475. Moreover, the FAME report was not admitted as evidence at the bench trial, and was not included in the lower court record. Thus, this Court cannot determine whether the evidence preponderates against the conclusions made in the FAME report regarding the best-interest factors, which the court adopted. See *id*. There is no indication regarding what factors favored each party, favored neither party, or did not apply. Therefore, remand is required for the trial court to make explicit factual findings and conclusions regarding each best-interest factor, and for entry of an amended judgment of divorce.

## B. FAILURE TO INTERVIEW THE CHILDREN

In determining a child's custody preference,

> [t]he court may interview the child privately to determine if the child is of sufficient age to express a preference regarding custody, and, if so, the reasonable preference of the child. The court shall focus the interview on these determinations, and the information received shall be applied only to the reasonable preference factor. [MCR 3.210(C)(5).]

A six-year-old child is old enough to give a reasonable preference. *Bowers v Bowers*, 190 Mich App 51, 55-56; 475 NW2d 394 (1991). To be reasonable, the child's preference does not need to

be accompanied by a detailed analysis. *Pierron II*, 486 Mich at 92. The court must state on the record whether the child was able to express a reasonable preference, and whether the preference was considered by the court. *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 458; 705 NW2d 144 (2005). But the court need not violate the child's confidence by disclosing her choice. *Id*. The purpose of the *in camera* interview is to reduce the emotional trauma caused to a child by testifying in open court, or in front of her parents, and to relieve the child of having to openly choose a side. *In re HRC*, 286 Mich App 444, 452; 781 NW2d 105 (2009). The failure to interview a child does not require reversal when the child's preference does not overcome the weight of the other best-interest factors. *Treutle v Treutle*, 197 Mich App 690, 696; 495 NW2d 836 (1992).

Plaintiff argued that the trial court erred when it took into consideration the children's confidential interviews conducted by FAME expressing their reasonable preferences, instead of actually interviewing the children. On the first day of the bench trial, the court acknowledged the confidential FAME memorandum regarding the interviews that FAME conducted with SA and AA. The court asserted that it would not be interviewing the children "because the family assessment people have done that, and they've provided me with . . . a confidential report regarding the children." If, at the end of the hearing, the court thought that child interviews were necessary, the court would conduct them. When questioning plaintiff regarding each best-interest factor individually, the court noted that it had the children's preferences from their interviews in the FAME memorandum to be considered for factor (i). When plaintiff brought AA to the court on the last day of the bench trial, asserting that the court previously mentioned wanting to conduct interviews, the court clarified that it did not, and made plaintiff's sister remove AA from the court house. In rendering its custody decision, the court noted that "both children have been interviewed and the [c]ourt's taking their wishes and concerns into consideration."

In this instance, the trial court did not err when it relied on the confidential FAME memorandum regarding the private interviews conducted of the children, rather than performing the interviews *in camera*. Although MCR 3.210(C)(5) only provides for the court to conduct such interviews, the word "may" in the statute denotes discretion. See *Old Kent Bank v Kal Kustom, Enterprises*, 255 Mich App 524, 532; 660 NW2d 384 (2003) (the word "may" is not a "word of command" unless the context or subject matter of the statute suggests that it was used that way). The statute does not require the court to conduct such interviews. Moreover, the interviews by FAME were appropriate because the children were of age to express a reasonable preference. See *Bowers*, 190 Mich App at 55-56. Both children were over six years old at the time of the interviews. The court noted that it considered the children's preferences. The safeguards imposed by an *in camera* interview, such as, protecting the child from having to testify as to their preference in front of their parents, were still intact. See *In re HRC*, 286 Mich App at 452. The court did not disclose the children's preferences from the confidential memorandums. It merely noted that it assumed that AA's preference was to live with plaintiff because, since the time of her interview, she had an altercation with defendant and had moved from defendant's home to plaintiff's home. SA's preference was never disclosed. Therefore, the trial court did not err when it considered the children's FAME interviews, rather than conducting interviews, because such interviews are within the court's discretion under MCR 3.210(C)(5).

## C. ESTABLISHED CUSTODIAL ENVIRONMENT

Plaintiff argues on appeal that the trial court erred when it relied on the FAME report rather than making an independent determination regarding the established custodial environment of SA. Plaintiff argues that SA had an established custodial environment with both parties, and therefore, the burden of proof for SA's custody determination should have been whether it was in her best interest by a preponderance of the evidence, rather than by clear and convincing evidence.

Whether an established custodial environment exists is a question of fact that the trial court must first address before making a best-interest determination. *Brausch v Brausch*, 283 Mich App 339, 356 n 7; 770 NW2d 77 (2009). If the court fails to make a specific finding regarding the existence of a custodial environment, this Court will remand, unless there is sufficient information in the record for this Court to make its own finding by de novo review. *Rittershaus*, 273 Mich App at 471. "The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered." MCL 722.27(1)(c). An established custodial environment "is both a physical and a psychological environment that fosters a relationship between custodian and child[,] and is marked by security, stability, and permanence." *Berger*, 277 Mich App at 706. The existence of a temporary custody order does not preclude an established custodial environment with the noncustodial parent; however, a custodial environment may be established as a result of a temporary custody order. *Id*. at 707.

On the first day of the bench trial, the court addressed the established custodial environments of the children:

> [T]he first thing I have to do is establish whether there's an established custodial environment for the children. And if there is, then I have to – then that changes the burden of proof.
>
> Now, the evaluators believe that [SA] hasn't [sic] established custodial environment with [defendant], and that neither party has established custodial environment with [AA], because of the fact that [AA] is under – been under guardianship for some time.
>
> So, if I make that finding that the established environment is with [defendant], then if you're [(plaintiff)] asking for joint legal custody and sole physical custody, you have to show by clear and convincing evidence that that's what [is] appropriate for [SA].
>
> Regarding [AA], the burden of proof would be preponderance of the evidence since – if I make the finding that there's no established custodial environment.

Then the court said that the established custodian environments were provided in the FAME report, and proceeded to question plaintiff regarding the best-interest factors. Seemingly, the

trial judge misspoke, or there is a typographical error in the transcript, where the court asserted that "[SA] hasn't established custodial environment with [defendant]." Seemingly, the court determined that SA had an established custodial environment with defendant; otherwise, plaintiff's argument on appeal would be nonsensical.

The trial court's determination that SA's established custodial environment existed with defendant, and therefore, the proper burden of proof was by clear and convincing evidence, was not against the great weight of the evidence. An established custodial environment can be established by a temporary custody order. *Id*. Here, the trial court entered an order for temporary custody on May 3, 2017, awarding defendant temporary physical custody of SA. Plaintiff was awarded parenting time every weekend. There are indications in the record that SA lived with defendant, and had this parenting time schedule, even before entry of this order. Defendant testified that, in April 2017, he did not release SA to plaintiff for parenting time over the weekend due to the CPS investigation regarding allegations of partying in plaintiff's home while her tenants lived there. CPS told defendant not to release SA to plaintiff until a team meeting was held. SA lived with defendant at that time due to CPS intervention. CPS would not allow SA to live with plaintiff. Defendant filed an emergency motion for supervised parenting time and temporary custody on April 26, 2017, asserting that SA lived with defendant, and plaintiff had parenting time on the weekend, pursuant to a CPS safety plan. Thus, SA's primary residence was with defendant from at least April 2017, to the time of the bench trial in January 2018.

Defendant was responsible for disciplining SA, and he put parental blocks on her cellular telephone. There were rules in defendant's home, and SA shared the responsibility for chores with the daughter of defendant's girlfriend. Defendant made sure that SA was clean, and brushed her hair, before going to school. Defendant made sure that SA attended school, and was on time. SA had a bedtime, and defendant's girlfriend woke SA up for school in the morning. After school, SA had to do homework before reading, watching television, or playing games. Plaintiff testified that, when SA returned home after her weekends with plaintiff, she was defiant, distant, and very difficult on Sundays and Mondays. Therefore, the trial court's determination that SA's established custodial environment was with defendant only, rather than a joint custodial environment with both parties, was not against the great weight of the evidence.

### D. PARENTING TIME

Plaintiff argues on appeal that it was not in SA's best interests to have primary parenting time with defendant, and only three weekends each month with plaintiff. Defendant was awarded sole physical and legal custody of SA. The judgment of divorce awarded plaintiff parenting time the first, third, and fourth weekends of each month, three weeks in the summer, and alternating holidays. Defendant was awarded parenting time every week from Sunday evening to Friday evening, the second and fifth weekend of each month if applicable, two weeks in the summer, and alternating holidays.

"Parenting time shall be granted in accordance with the best interests of the child." MCL 722.27a(1). Parenting time may be granted in a frequency, duration, and type reasonably calculated to promote a strong relationship between the parent and child. MCL 722.27a(1); *Gaudreau v Kelly*, 298 Mich App 148, 156; 826 NW2d 164 (2012). It is presumed that a strong

child-parent relationship is in the child's best interests. MCL 722.27a(1). The following factors are considered in determining a parenting time schedule:

> (a) The existence of any special circumstances or needs of the child.

> (b) Whether the child is a nursing child less than 6 months of age, or less than 1 year of age if the child receives substantial nutrition through nursing.

> (c) The reasonable likelihood of abuse or neglect of the child during parenting time.

> (d) The reasonable likelihood of abuse of a parent resulting from the exercise of parenting time.

> (e) The inconvenience to, and burdensome impact or effect on, the child of traveling for purposes of parenting time.

> (f) Whether a parent can reasonably be expected to exercise parenting time in accordance with the court order.

> (g) Whether a parent has frequently failed to exercise reasonable parenting time.

> (h) The threatened or actual detention of the child with the intent to retain or conceal the child from the other parent or from a third person who has legal custody. A custodial parent's temporary residence with the child in a domestic violence shelter shall not be construed as evidence of the custodial parent's intent to retain or conceal the child from the other parent.

> (i) Any other relevant factors. [MCL 722.27a(7).]

The statutory best-interest factors in MCL 722.23 are also relevant to parenting time decisions. *Shade v Wright*, 291 Mich App 17, 31; 805 NW2d 1 (2010). Although custody decisions require findings under all of the best-interest factors, parenting time decisions can be made with findings only on the contested issues. *Id*. at 31-32.

Plaintiff does not cite to any specific factor in MCL 722.27a(7) or MCL 722.23 in arguing that the parenting time schedule was not in SA's best interests. None of the factors in MCL 722.27a(7) apply to the circumstances surrounding SA. Rather, plaintiff argues that primary parenting time with defendant was not in SA's best interests due to testimony that defendant rarely spent time with the family after work, punched holes in the wall, and yelled. As addressed above, the trial court did not provide findings regarding each best-interest factor in terms of custody, nor did it address the parenting time factors. The court's award of parenting time to plaintiff was based on its determination that the parties' dysfunctional relationship and inability to coparent was detrimental to the children. It was the same parenting time schedule that was awarded in May 2017, pursuant to the order for temporary custody. As a remand is necessary for the court to provide explicit findings regarding the custody best-interest factors,

which also apply to a parenting time determination, and the parenting time factors were not discussed below, a remand regarding the parenting time schedule is also appropriate.

This matter is affirmed in part, vacated in part, and remanded for the trial court to make explicit factual findings regarding the best-interest factors in relation to custody and parenting time only, and for entry of an amended judgment of divorce. We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly