*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JASON AARON FUCHS,

      Plaintiff/Counterdefendant-
      Appellee,

UNPUBLISHED
March 28, 2019

v

No. 343335
Livingston Circuit Court
LC No. 12-046417-DM

ANGIE LYNN FUCHS, also known as ANGIE
LYNN BAIR-HANCHETT,

      Defendant/Counterplaintiff-
      Appellant.

Before: M. J. KELLY P.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals as of right the trial court's order modifying a child custody arrangement by awarding plaintiff sole legal custody of the parties' minor children and modifying defendant's parenting time. We affirm.

Following their divorce in 2013, the parties were awarded joint legal and physical custody of their minor children, with defendant having primary parenting time. In 2017, defendant and her new husband moved from Pinckney to Morrice and enrolled the children in the Morrice School District without consulting plaintiff or obtaining his consent. The parties thereafter filed competing motions to determine which school district the children should attend, and plaintiff also sought sole custody of the children due to defendant's refusal to cooperate with arrangements for plaintiff's makeup parenting time, as well as alleged conduct by defendant to alienate the children against plaintiff. On November 30, 2017, the trial court found that the children should remain in the Pinckney School District. The trial court issued a temporary order giving plaintiff primary parenting time with the children until defendant moved back to the Pinckney area, which she indicated that she planned to do. However, after defendant decided not sell her Morrice home, the trial court held a custody hearing to determine whether its prior custody order should be changed. Following the hearing, the trial court awarded plaintiff sole legal custody of the children, and modified the parenting time arrangement so that primary parenting time would be with plaintiff, with defendant receiving parenting time on Wednesday

evenings, alternating weekends, and shared holidays and summer vacations. Defendant now challenges the trial court's decisions to award plaintiff sole legal custody of the children, and to modify the parenting time arrangement.

"In child-custody disputes, 'all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of the evidence or committed a palpable abuse of discretion or a clear legal error on a major issue.' " *Dailey v Kloenhamer*, 291 Mich App 660, 664; 811 NW2d 501 (2011), quoting MCL 722.28. The great weight of the evidence standard instructs that "the trial court's determination will be affirmed unless the evidence clearly preponderates in the other direction." *Mitchell v Mitchell*, 296 Mich App 513, 519; 823 NW2d 153 (2012). As applied to custody decisions, an abuse of discretion "is found only in extreme cases in which the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will or the exercise of passion or bias." *Rains v Rains*, 301 Mich App 313, 324; 836 NW2d 709 (2013) (quotations omitted). Clear legal error occurs when the trial court chooses, interprets, or applies the law incorrectly. *Fletcher v Fletcher*, 447 Mich 871, 881; 526 NW2d 889 (1994).

In *Pierron v Pierron*, 282 Mich App 222, 243-245; 765 NW2d 345 (2009), this Court explained:

> The Child Custody Act, MCL 722.21 *et seq.*, "applies to all circuit court child custody disputes and actions, whether original or incidental to other actions." MCL 722.26(1). The purposes of the act are to promote the best interests of the child and to provide a stable environment for children that is free of unwarranted custody changes. Once the circuit court has entered an order or judgment in a child custody action, that order or judgment may be modified or amended only "for proper cause shown or because of change of circumstances . . . ." MCL 722.27(1)(c). Upon finding proper cause or a change in circumstances sufficient to revisit an existing custody order, the circuit court's threshold determination is whether an established custodial environment exists . . . .[1]
>
> If the circuit court finds that an established custodial environment exists, then the circuit court "shall not modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c). This higher "clear and convincing evidence" standard also applies when there is an established custodial environment with both parents. If, on the other hand, the court finds that no established custodial environment exists, then the court may change custody or enter a new order if the party bearing the burden proves by a preponderance of the

---

[1] The moving party is not required to show as drastic a change of circumstances when a proposed parenting time alteration would not change a child's established custodial environment. See, *Shade v Wright*, 291 Mich App 17, 23-30; 805 NW2d 1 (2010).

evidence that the change serves the child's best interests. [Quotations and citations omitted.]

We first address defendant's argument that the trial court erred by finding that the children had an established custodial environment with both parties. We find no error.

MCL 722.27(1)(c) provides, in pertinent part:

The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.

"An established custodial environment is one of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child." *Berger v Berger*, 277 Mich App 700, 706; 747 NW2d 336 (2008). "It is both a physical and a psychological environment that fosters a relationship between custodian and child and is marked by security, stability, and permanence." *Id*. "Factors to be considered in determining whether an established custodial environment exists include the age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship." *Pierron*, 282 Mich App at 244 (quotations omitted). "Whether an established custodial environment exists is a question of fact that we must affirm unless the trial court's finding is against the great weight of the evidence." *Berger*, 277 Mich App at 706.

Defendant argues that the trial court's finding that an established custodial environment existed with both parties is against the great weight of the evidence. In support of her argument, defendant emphasizes that she had been the children's primary caregiver since the divorce, and she was the parent primarily responsible for making sure the children were ready for school, took them to doctor appointments, and provided support and discipline. However, evidence that one parent has been the primary caregiver does not preclude a finding that an established custodial environment exists with the other parent. This Court has clearly recognized that an established custodial environment can exist with both parents in their respective households. See, e.g., *Berger*, 277 Mich App at 707; *Mogle v Scriver*, 241 Mich App 192, 197-198; 614 NW2d 696 (2000).

Plaintiff testified that he and the children had a very close relationship, and they had grown closer since the children began residing primarily with him. The children enjoyed staying with him, and they liked spending time reading and watching television with him, or ice skating on the lake in front of his home. Plaintiff testified that the children would come to him with their successes and their problems. He stayed home with them when they were sick. He disciplined the children when necessary, by giving them timeouts or grounding them from their electronics. He provided them with clothing, food, and toys. This evidence supports the trial court's finding that, notwithstanding defendant's role as the primary caregiver, the children also looked to plaintiff for love, guidance, stability, and attention.

Defendant also appears to rely on her own misconduct to argue that an established custodial environment did not exist with plaintiff. The trial court found that defendant had engaged in misconduct that was designed to alienate the children from plaintiff. These actions included failing to inform plaintiff about doctor and dental visits, and the school change, and making unsupported allegations of domestic violence and abuse. Plaintiff also testified about defendant's actions in providing the Pinckney School District with a personal protection order (PPO) against plaintiff that defendant obtained, but then failing to inform the school that the PPO had been rescinded, which negatively impacted plaintiff's dealings with school personnel. Although defendant faults plaintiff for not taking advantage of some of his parenting time, the trial court found, and the evidence supports, that some of this was due to defendant's refusal to cooperate with plaintiff. In sum, trial court's finding that an established custodial environment also existed with plaintiff is not against the great weight of the evidence.

Defendant also argues that the trial court erred by failing to consider the factors in MCL 722.27a(7) when determining that plaintiff should receive primary physical custody of the children and defendant be granted limited parenting time pending the court's custody decision. We disagree.

When a proposed parenting time change would result in a change of a child's established custodial environment, the trial court is required to review the best-interest factors in MCL 722.23. *Shade v Wright*, 291 Mich App 17, 32; 805 NW2d 1 (2010). The trial court may consider the factors set forth in MCL 722.27a(7), along with the best-interest factors in MCL 722.23, when any alteration in parenting time would not change the child's custodial environment. *Id*. at 31.

With respect to the trial court's November 2017 parenting time decision, defendant maintains that the trial court did not consider either the best interest factors under MCL 722.23 or the factors in MCL 722.27a(7). MCL 722.27a(7) provides, however, that courts "may" consider the stated statutory factors when "determining the frequency, duration, and type of parenting time." The term "may" is permissive. *Walters v Nadell*, 481 Mich 377, 383; 751 NW2d 431 (2008). As such, the trial court was not required to expressly consider or make findings regarding the factors set forth in MCL 722.27a(7). See *Shade,* 291 Mich App at 31-32 ("Custody decisions require findings under all of the best interest factors, but parenting time decisions may be made with findings on only the contested issues.").

The trial court did review some of the factors set forth in MCL 722.27a when it determined whether defendant would be permitted to change the children's school, which in turn would necessarily affect the parties' parenting time arrangement.[2] In doing so, the trial court specifically considered factors (e) and (f) in MCL 722.27a(7), and determined that these factors supported moving the children from defendant's home to plaintiff's home because of the

---

[2] The trial court appears to have taken this appropriate approach by conducting a so-called "*Lombardo* hearing" due to the parties' inability to agree where the children should attend school. *Pierron*, 282 Mich App at 247, citing *Lombardo v Lombardo*, 202 Mich App 151, 159-160; 507 NW2d 788 (1993).

distance involved, plaintiff's inability to exercise parenting time on Wednesday evenings, and the court's decision that defendant had not met her burden of showing that the school change was in the children's best interests.

In addition, in the context of deciding whether defendant should be allowed to change the children's school, the trial court reviewed the best-interest factors in MCL 722.23. The trial court thus invoked factor (i) in MCL 722.27(a)(7) as well.[3] Moreover, defendant's argument that the trial court erred by temporarily changing the parenting time schedule is undercut by the fact that she had indicated to the trial court at the hearing that she planned to move back to Pinckney before the start of the second school semester, and the trial court's indication that, if defendant did so, it would revisit its decision. Thus, defendant is not entitled to relief on the ground that the trial court failed to consider the factors in MCL 722.27a(7) separately from those in MCL 722.23 before changing parenting time.

Finally, with respect to the trial court's ultimate custody decision, defendant argues that the court made a number of factual errors in its findings regarding the best-interest factors in MCL 722.23 in awarding sole legal custody to plaintiff. We disagree.

Legal custody pertains to the "decision-making authority as to the important decisions affecting the welfare of the child." MCL 722.26a(7)(b). The trial court is required to determine whether joint custody is in the best interest of the children by considering the best interest factors set forth in MCL 722.23 and whether "the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child." MCL 722.26a(1).

In this case, the evidence clearly supports the trial court's finding that the parties, and in particular defendant, were unable to effectively communicate or agree on the needs and best interests of their children. Defendant moved herself and the children to Morrice and enrolled the children in Morrice schools without informing plaintiff or seeking his consent. She also failed to inform plaintiff about doctor and dental appointments. Plaintiff attempted to consult defendant about enrolling the children in Girl Scouts or horseback riding lessons, but defendant did not respond to his inquiries. Plaintiff also testified about defendant's action of providing a copy of a PPO to the Pinckney school, but then failing to inform the school that it had been rescinded, which negatively impacted plaintiff's dealings with school personnel. See *Pierron*, 282 Mich App at 246 ("a relocating parent who shares legal custody with another parent does not have the authority to unilaterally make important decisions affecting the welfare of the child, even if the relocating parent is the primary physical custodian"). The trial court's finding that joint custody was not feasible is not against the great weight of the evidence.

In deciding which parent should receive custody of the children, and making the concurrent parenting time determination, the trial court considered the best-interest factors in MCL 722.23(a) - (l). Defendant challenges the trial court's findings with respect to factors (a),

---

[3] Accordingly, we reject defendant's argument that the trial court did not consider the children's best interests before deciding to change parenting time.

(b), (c), and (k). Defendant also argues that the trial court erred by failing to consider her willingness to stay with the children at her in-laws' residence in Pinckney.

With respect to the latter, the record discloses that the trial court did consider defendant's willingness to stay with her in-laws, but found that this arrangement would not further the children's best interests. Although this arrangement would have allowed both parents to remain closer to the children's school, given defendant's testimony that she did not plan to sell her home in Morrice, this plan would essentially amount to a temporary arrangement primarily for her benefit, rather than provide stability for the children. The trial court found that the parties were equal with respect to factors (d) (length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity) and (e) (permanence, as a family unit, of the existing or proposed custodial home or homes). However, this took into account defendant's current home with her husband. The trial court found that defendant's plan to stay with the children at her in-laws' residence would essentially introduce the children to a third home environment, which would undermine their stability. Such an arrangement would have weighed against defendant, and favored plaintiff, with respect to factor (e).

Defendant has not shown that the trial court's findings concerning factors (a) and (b) were against the great weight of the evidence. With respect to factor (a), defendant argues that the court erred by focusing on the fact that even though she and the children were bonded, she put her needs before the children's. However, this impacts the kind of emotional ties defendant had with the children. A trial court does not err by considering one parent's influence on the other parent's relationship with a child for purposes of factor (a), even though that evidence is also relevant to factor (j). *Fletcher*, 229 Mich App at 25-26. As this Court has observed, the factors have natural overlap, and evidence relevant to factor (j) could be relevant to other factors, including factor (a). *Id*.

With respect to factor (b), defendant's ability to give "guidance" to the children is also negatively impacted by her actions in trying to alienate the children from plaintiff. The trial court's finding that these efforts by defendant reflected negatively on her capacity to provide guidance is not against the great weight of the evidence.

With respect to factor (c), concerning the parties' relative abilities to provide the children with food, clothing, medical care, and other necessities, the trial court weighed this factor "very slight[ly]" in favor of plaintiff because defendant removed her daughter from therapy for no good reason. Defendant complains that the trial court's finding regarding this factor is problematic, given that plaintiff had a significant child support arrearage. However, the trial court noted the arrearage in its consideration of this factor and explained that the arrearage was the reason it found that this factor only slightly favored plaintiff. Moreover, the trial court noted that both parents could make purchases for the children, which is supported by defendant's testimony. Although defendant did not actually take her daughter out of therapy, she did cause her daughter to miss at least one appointment, and she argued against keeping her daughter in therapy because she did not see any improvement. To the extent that the trial court's finding regarding this factor could be considered erroneous, we conclude that it was harmless under the circumstances. As indicated, the trial court found that this factor only "very slight[ly]" favored plaintiff. Considering the trial court's findings with respect to factor (j), which the court found

most important, there is no basis for concluding that the court's finding with respect to factor (c) affected its overall decision.

Defendant completely ignores the trial court's findings regarding factor (j), even though the court stated that this factor was "the most important one." The trial court found that defendant had repeatedly attempted to alienate the children from plaintiff. The trial court found that this factor "heavily weighed in favor" of plaintiff due to defendant's continued "baseless accusations against [plaintiff]" as well as her "willful violation of [the] previous parenting time order." The evidence supports this finding. The trial court arguably blamed defendant for some of the parties' miscommunications that plaintiff also played a role in. As a whole, however, the evidence supports the trial court's finding that defendant did try to alienate the children from plaintiff and repeatedly made unilateral decisions without his input.

Defendant's challenge to the trial court's finding concerning domestic violence is without merit. The parties provided conflicting testimony about whether domestic violence had occurred. In addition, evidence was presented that the police were not called and no charges were filed for the alleged incident in 2010, and defendant was acquitted of charges that arose from an alleged later incident. Given the trial court's determination that defendant was not a credible witness, defendant has not shown that the trial court's finding that there was no domestic violence is against the great weight of the evidence.

Given the trial court's findings, the court did not abuse its discretion by awarding sole legal custody to plaintiff. Although defendant had been acting as a de facto sole parent, her actions were inappropriate. The trial court reasonably found that defendant should not be rewarded for her misconduct. Plaintiff, by contrast, was willing to continue to foster a relationship between defendant and the children.

With respect to parenting time, the trial court "flipped" the prior arrangement primarily due to the distance between the parties' homes. This was not an abuse of discretion, given that defendant and plaintiff both testified that there was an approximate one-hour distance between them. Because defendant chose to remain in Morrice, it would have been impractical for the parties to have alternate weekly parenting times, at least during the school year. Accordingly, we affirm the trial court's decision.

Affirmed.

/s/ Michael J. Kelly
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra

-7-