*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

NIKOLAS DISCHER,

        Plaintiff-Appellant,

v

JANENE BERLI, f/k/a JANENE NESBIT,

        Defendant-Appellee.

UNPUBLISHED
March 14, 2024

No. 366862
Ionia Circuit Court
LC No. 20-S-34344-DC

Before: SWARTZLE, P.J., and REDFORD and YATES, JJ.

PER CURIAM.

Plaintiff, Nikolas Discher, appeals of right a trial-court order directing the parties to enroll their minor child, END, in Lowell Public Schools. The trial court rejected plaintiff's proposal that END attend Saints Peter and Paul School. On appeal, plaintiff contends that the trial court abused its discretion by ordering END to be enrolled at Lowell Public Schools because its order was based on a misinterpretation of MCL 722.23(b). Plaintiff also asserts that the trial court's factual findings were against the great weight of the evidence. We affirm.

## I. FACTUAL BACKGROUND

This case started in May 2020 when plaintiff filed a complaint for custody, parenting time, and support for then-two-year-old END, the only child whom plaintiff and defendant, Janene Berli, share. The parties separated in January 2020, when plaintiff left their Ann Arbor home and moved to Rockford before eventually moving to Ionia. The trial court entered a temporary uniform child support order that afforded each party 182.5 overnights each year. According to the custody order, the parties agreed to share legal custody, and they similarly agreed that physical custody would be shared while this case was pending.

When it came time for END to attend preschool, the parties could not reach an agreement, so they asked the trial court to decide which preschool END should attend. By that time, defendant had moved to Lowell. Plaintiff, who continued to live in Ionia, wanted END to attend Saints Peter and Paul School, a Catholic school in Ionia, but defendant wanted END to attend Curiosity Corner, a part of Lowell Public Schools. The trial court did not regard the dispute as an important decision, so the court was not required to order the parties to enroll END in a specific preschool.

When END was old enough to attend kindergarten, the parties returned to the trial court to ask the court to decide where END should attend school. Plaintiff proposed that END attend Saints Peter and Paul School, but defendant requested that END attend Lowell Public Schools. Plaintiff wanted END to attend Saints Peter and Paul School because that school is affiliated with the church that she attended whenever she stayed with plaintiff, END currently attended preschool there and had many friends there, and her teacher said END's classmates miss her when she is gone. Plaintiff asserted that, among the 12 best interest factors, see MCL 722.23, only factor h—the home, school, and community record of the child, MCL 722.23(h)—applied. Plaintiff contended that END had a record of success at Saints Peter and Paul (which was affordable, conveniently located, and had an excellent reputation), and END had developed friendships at the school. In response, defendant suggested that END should attend Lowell Public Schools. Defendant, who is Protestant, objected to END attending a religious school. She did "not agree that a Catholic school is the appropriate school for" END. Defendant also made clear that she was open to discussing other school options that reflected a compromise between the parties.

A referee conducted a hearing on the motion, and plaintiff offered testimony from himself and Barbara Voet, END's developmental kindergarten teacher at Saints Peter and Paul School. In response, defendant testified on her own behalf. Plaintiff stated that his preferred school for END was Saints Peter and Paul School. END was attending developmental kindergarten at Saints Peter and Paul. According to conversations plaintiff had with other parents, he believed approximately 15 of END's current classmates would be attending that school for kindergarten. Plaintiff testified that he was involved with END's school and he volunteered at the school and the affiliated church. Plaintiff explained that he opposed END attending kindergarten at Lowell Public Schools because he wanted her to have consistency and he liked Saints Peter and Paul School because it was private and "a great establishment that happens to be Catholic." Plaintiff testified that he was not opposed to public schools, but he was opposed to moving END to a different school just to get her in public school. Plaintiff stated that his experience attending public school was not the best.

Voet testified that END excelled in developmental kindergarten at Saints Peter and Paul and got along well with the other students. Voet stated she was sure between 12 and 15 of END's classmates would be attending kindergarten at the school in the fall. Voet said that the kindergarten class was capped at 24, and that she thought the current kindergarten class had 16 students. Saints Peter and Paul School is a kindergarten through 8th grade school, and most students attend Ionia High School after 8th grade. Voet said she sent her four children to Saints Peter and Paul School. She described the school as "a faith filled loving environment with quality parents and high goals and standards for the kids."

Defendant stated that, based on the circumstances, Lowell Public Schools was her preferred school for END. She explained that she chose Lowell Public Schools because it was a better school than Ionia or Saranac public schools, which were the other public-school districts located between plaintiff and defendant. Defendant said she made that determination based on test scores, diversity, and extracurricular activities. Defendant said that END had friends in defendant's neighborhood who would be attending Lowell Public Schools. Defendant's younger son would also be attending Lowell Public Schools when he was old enough, and defendant believed that it would be a benefit for him and END to attend the same school. Defendant's primary opposition to END attending Saints Peter and Paul School was because it was a Catholic school and defendant is Protestant, not Catholic. Defendant stated that, at that time, END's religious upbringing was split evenly between

Catholicism with plaintiff and Protestantism with defendant, and if END were to attend a Catholic school five days each week, then she would be more exposed to Catholicism. Beyond the religious issue, defendant was concerned that Saints Peter and Paul School was too small to provide certain desirable extracurricular activities, such as certain girls sports, drama, and quiz bowl.

The referee issued a written order after the hearing recommending that END be enrolled in Lowell Public Schools. The referee analyzed each of the 12 best interest factors, see MCL 722.23, and determined that most factors did not favor either party. The referee concluded factor b, which focuses on "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any[,]" MCL 722.23(b), favored defendant's school choice. The referee made this determination because END was equally Catholic and Protestant, and attending a Catholic school each day would likely alter that balance. Accordingly, that factor favored enrolling END in a public school. The referee also found that factor e, concerning "[t]he permanence, as a family unit, of the existing or proposed custodial home or homes[,]" MCL 722.23(e), also slightly favored defendant's choice of schools.

Plaintiff objected, asserting that factor b favored Saints Peter and Paul and that factor e was neutral. With respect to factor b, plaintiff insisted that that factor should have favored Saints Peter and Paul because it "would clearly 'continue' [END]'s education 'in her religion or creed,' " while defendant's proposed school would not. Plaintiff also claimed that the referee's decision regarding factor b infringed on plaintiff's constitutional rights under both the federal and state constitutions "by disfavoring a religious education plan in favor of a non-religious one." According to plaintiff, the referee's ruling on factor b diminished plaintiff's "right to direct the education of his daughter because of his religious belief," which plaintiff characterized as unconstitutional.

Plaintiff also filed a brief the day before the de novo hearing, reiterating the religion-based arguments in his objection. Contrary to his written objections, in which he argued that factor *l* was neutral, plaintiff's brief asserted that factor *l* should favor Saints Peter and Paul because: (1) many children who attended preschool with END would also attend kindergarten at Saints Peter and Paul School; (2) that school was just 20 minutes from defendant's house and 15 minutes from plaintiff's house; (3) END already knew her kindergarten teacher; (4) plaintiff was "quite heavily" involved in the Catholic school and END was also involved; (5) many of the students are not Catholic; and (6) END's preschool teacher "would expect [END] to excel" in kindergarten there. Consequently, plaintiff concluded that it was in END's best interests to attend Saints Peter and Paul.

The trial court then conducted a de novo hearing on May 2, 2023. At that hearing, plaintiff reiterated his argument that the referee's ruling was unconstitutional. Plaintiff argued that most of the best interest factors were either neutral or irrelevant, but factor b was applicable and weighed in favor of Saints Peter and Paul. Plaintiff noted that there was very little evidence concerning the relative quality of the school options. Plaintiff summarized his position by saying that "a religious education is better than a secular education for this child who has been raised—as far as preschool education has been raised in a religious education." Addressing factor b, plaintiff argued that the trial court simply had two choices: "Either we don't really weigh the religion, which I think would be the improper application of that factor, or we look at which parent is better able to continue the religious education of the child and which one would prefer going a different direction."

Defendant countered by arguing that factor b referred to education and religion as separate matters. Also, defendant did not believe that the referee's recommendation was unconstitutional. Defendant argued that, under the referee's recommendation, both parties' religious choices were respected, and she asserted that if the court weighed factor b in favor of Saints Peter and Paul, that would be tantamount to ruling that Catholicism is better for END. According to defendant, such a ruling would infringe on defendant's constitutional right to freedom of religion. Defendant stated that she proposed a public school to be fair to both parties so that END could be exposed in equal measure to both parties' religions. Therefore, defendant urged the trial court to adopt the referee's recommendation.

At the conclusion of the de novo hearing, the trial court ruled from the bench, noting that factors a, c, d, e, f, g, h, i, j, and k were either neutral or inapplicable. The trial court then addressed factor b and disagreed with the referee that that factor weighed in favor of Lowell Public Schools. Instead, the trial court found that that factor was equally balanced between the two school choices. The trial court expressed approval of defendant's claim that ordering END to attend Saints Peter and Paul would infringe on defendant's right to raise END in her religion or creed. The trial court opined that END would be "fine" at Saints Peter and Paul or at Lowell Public Schools, and declined plaintiff's invitation to find that a religious education would be better for END than a secular one. The trial court therefore concluded that neither party's proposed school had an advantage after all 12 factors were considered. But the trial court ruled that END should attend Lowell Public Schools because it would infringe upon defendant's religion and her ability to raise END in the Protestant religion if the trial court ordered END to attend Saints Peter and Paul. The trial court stated that "this decision allows both [parties] to do as much as you can as your role as dad, as your role as mom, to raise them in your chosen religion without infringing one upon the other." The trial court memorialized that ruling in a written order, and this appeal followed.

## II. LEGAL ANALYSIS

Plaintiff argues that the trial court erred in ordering that END attend Lowell Public Schools. "Because [a child]'s placement in a particular school district is an important decision affecting [the child's] welfare, both [parents] must agree on that decision." *Bowers v VanderMeulen-Bowers*, 278 Mich App 287, 296; 750 NW2d 597 (2008). "If they are unable to agree, the trial court must resolve the dispute according to the child's best interest." *Id*. To resolve a dispute about the child's school district, "[a] trial court must consider, evaluate, and determine each of the factors listed in MCL 722.23 . . . in determining the best interests of the child." *Lombardo v Lombardo*, 202 Mich App 151, 160; 507 NW2d 788 (1993). Here, plaintiff contends that the trial court misinterpreted MCL 722.23(b), and a proper interpretation of that statute reveals that that factor favored enrolling END at Saints Peter and Paul School. Second, plaintiff challenges the trial court's factual finding concerning the quality of the two proposed schools, asserting that the great weight of the evidence established that Saints Peter and Paul was the superior school.

"A ruling concerning an important decision affecting the welfare of a child is [considered] a discretionary ruling." *Pierron v Pierron*, 282 Mich App 222, 242; 765 NW2d 345 (2009), aff'd 486 Mich 81 (2010). "The abuse of discretion standard applies to the circuit court's discretionary rulings." *Id*. at 243. "The great weight of the evidence standard applies to all findings of fact" so "the circuit court's findings should be affirmed unless the evidence clearly preponderates in the opposite direction." *Id*. at 242-243. "We review de novo questions concerning the interpretation

-4-

and application of a statute." *Id*. at 243. "A circuit court commits legal error 'when it incorrectly chooses, interprets, or applies the law.' " *Id*. (citation omitted). With these standards in mind, we shall consider plaintiff's two arguments in turn.

## A. ANALYSIS OF FACTOR B SET FORTH IN MCL 722.23(b)

Plaintiff focuses on one of the 12 best interest factors, known as factor b, which is defined in MCL 722.23(b) as "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." Plaintiff insists factor b is intended to apply to religious education, and the trial court erred in refusing to find that factor b favored plaintiff's school choice, Saints Peter and Paul School. Plaintiff asserts that factor b should have favored enrolling END at Saints Peter and Paul because it was the only option that had the capacity to continue END's religious education.

At a hearing under *Lombardo*, 202 Mich App 151, to determine where a child should attend school, "the court must narrowly focus its consideration of each best-interest factor on the specific 'important decision affecting the welfare of the child' that is at issue." *Pierron*, 282 Mich App at 252-253 (citation and alteration omitted). Here, plaintiff has focused on factor b, asserting that it applies as a matter of law to religious education. Our role in interpreting statutory language is to " 'ascertain the legislative intent that may reasonably be inferred from the words in a statute.' " *2 Crooked Creek v Cass Co Treasurer*, 507 Mich 1, 9; 967 NW2d 577 (2021). " 'In doing so, courts must give effect to every word, phrase, and clause in a statute and avoid an interpretation that renders nugatory or surplusage any part of a statute.' " *Id*. If " 'the statutory language is clear and unambiguous, judicial construction is not permitted and the statute is enforced as written.' " *Id*.

Here, the trial court found that MCL 722.23(b) did not favor either of the proposed schools. The trial court did not believe "education" and "religion" were "linked" in that factor. Operating under that interpretation of MCL 722.23(b), the trial court found that both parties were vested in END's education and in raising END in their own religion or creed. Plaintiff argues that the trial court erred in this interpretation, and that this factor should have favored enrolling END in Saints Peter and Paul because that would continue END's education in her religion or creed. But plaintiff incorrectly assumes that MCL 722.23(b) is relevant to this decision.

MCL 722.23(b) instructs the trial court to consider "*[t]he capacity and disposition of the parties involved* to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." (Emphasis added). The "capacity and disposition of the parties involved" is irrelevant to an analysis of which school would be in END's best interests. Plaintiff's interpretation of MCL 722.23(b) glosses over the opening words of that subsection, focusing instead on the latter portion of the subsection. Plaintiff reads that statute as analyzing which school option would "continue the education . . . of the child in his or her religion or creed." But that interpretation runs afoul of the rules of statutory interpretation, which require that all parts of the statute must be given meaning. *2 Crooked Creek*, 507 Mich at 9. Just because that subsection refers to "education" does not mean the subsection is relevant to the inquiry about which school a child should attend. Giving effect to every word of MCL 722.23(b), that subsection instructs the trial court to consider one certain aspect of the parties' capacities and dispositions. A

factor that focuses on qualities of the parties has no bearing on a dispute over which school a child should attend when the school choice has no impact on the parties' custody or parenting time.

The trial court found, under factor b, that both parties were vested in END's education and in raising END in their religion or creed. Therefore, the trial court found that that factor was equal between the two school choices. To the extent that the trial court erred, its error was in believing MCL 722.23(b) applies to school-choice decisions and was a neutral factor. The trial court should have determined that that factor was not relevant to the determination of the school at which END should be enrolled. The school END should attend has no impact on the parenting time or custody of either party, so MCL 722.23(b) has no bearing on the decision about END's school. Therefore, we are not persuaded by plaintiff's assertion that the trial court's decision about END's school was an abuse of discretion because it misinterpreted MCL 722.23(b).

### B. COMPARATIVE QUALITY OF THE SCHOOLS

Plaintiff asserts that the trial court's factual finding that the two proposed schools were of equal quality was against the great weight of the evidence. Plaintiff insists that Saints Peter and Paul School is superior to Lowell Public Schools. The trial court found that END would be "fine" at Saints Peter and Paul and that she would also be "fine" at Lowell Public Schools. The trial court discussed the quality of both schools, but that discussion was general and based largely on the trial court's own personal opinions. This was similar to the evidence presented at the referee's hearing, where the parties and Voet offered testimony about the quality of the schools that was general and mostly consisted of their own personal opinions.

Plaintiff's argument on appeal that Saints Peter and Paul was "clearly a superior school" is not supported by the record and is belied by plaintiff's own statements to the trial court. Plaintiff's argument rests on the fact that a teacher at that school testified that the school provided an excellent education, that the teacher said that many students went on to attend college, and that plaintiff was satisfied with the school. Plaintiff also notes that many of the children who went to developmental kindergarten at Saints Peter and Paul with END would be in her kindergarten class. Conversely, defendant expressed satisfaction with Lowell Public Schools and testified that children END knew would be attending Lowell Public Schools.

At the de novo hearing, plaintiff's counsel acknowledged that the record was "very thin" on statistics bearing on the quality of the schools. Indeed, the evidence about the quality of Saints Peter and Paul and Lowell Public Schools was general and amounted to little more than opinion testimony from the parties and a teacher at one school. Many of the facts plaintiff emphasizes on appeal—that END would know her classmates, that she was familiar with the campus, and that not all students there are Catholic—have no bearing on the quality of the two schools. On this record, the evidence does not establish that the trial court's finding that END would be fine at either school was against the great weight of the evidence. See *Pierron*, 282 Mich App at 242.

Plaintiff claims that END would have "many more opportunities" at Saints Peter and Paul, but he does not identify those opportunities. At the referee's hearing, defendant testified that Saints Peter and Paul lacked some extracurricular activities that were available at a larger school such as Lowell Public Schools. Plaintiff provided little, if any, rebuttal to that assertion. If anything, the evidence suggested there were more opportunities at Lowell Public Schools. Certainly, the record

does not clearly preponderate in favor of plaintiff's claim that Saints Peter and Paul offered more opportunities. Thus, we must uphold the trial court's finding that both schools were fine for END.[1]

Affirmed.

/s/ Brock A. Swartzle
/s/ James Robert Redford
/s/ Christopher P. Yates

---

[1] In her response brief, defendant argues that the trial court's ruling should be affirmed because it would violate her constitutional rights if she were ordered to enroll END at Saints Peter and Paul. Because plaintiff's arguments do not convince us that the trial court erred, we need not address the merits of defendant's constitutional claim.