*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MOSLEY, Minors.

UNPUBLISHED
March 19, 2025
1:39 PM

No. 370603
Wayne Circuit Court
Family Division
LC No. 2023-000577-NA

Before: YATES, P.J., and LETICA and N. P. HOOD, JJ.

PER CURIAM.

In this child custody[1] dispute, Sable Brock appeals by right the trial court's order awarding Byron Mosley sole physical and legal custody of their two minor children, SIM and SAM. On appeal, Brock argues that the trial court clearly erred by failing to adequately address all of the best-interest factors set forth in § 23 of the Child Custody Act of 1970, MCL 722.21 *et seq*., before awarding sole physical and legal custody to Mosley. We disagree and affirm.

## I. BACKGROUND

Brock and Mosley share two minor children. In August 2019, the trial court entered a default judgment of support in which it awarded Brock sole physical and legal custody of the children.

---

[1] The Wayne Circuit Court Family Division consists of multiple sections, including the Juvenile Section and the Domestic Relations Section. These proceedings began in the Juvenile Section when, in April 2023, DHHS petitioned to terminate Brock's parental rights. Afterward, in July 2023, Mosley moved in the Domestic Relations Section to modify the former child custody award. In November 2023, the trial court referred the child custody dispute to the Juvenile Section in accordance with Wayne Circuit Court Administrative Order 14-09J(C)(1)(c). As such, the presiding judge in the Juvenile Section entered the child custody order that Brock now challenges on appeal.

In April 2023, the Department of Health and Human Services (DHHS) petitioned the trial court to exercise temporary jurisdiction over the children. DHHS alleged that in January 2023, Brock was involved in a motor vehicle collision with the children in her vehicle. Brock was intoxicated at the time, as evidenced by hospital toxicology results which provided that her blood alcohol level was 0.271%. The following day, Brock was hospitalized again after attempting suicide by taking what DHHS personnel described as two handfuls of prescription strength pain medication. DHHS alleged that Brock had previously been diagnosed with depression, alcohol use disorder, post-traumatic stress disorder (PTSD), and bipolar disorder. Brock had a criminal history and a pending charge related to identify theft. DHHS also claimed that in March 2023, Brock was evicted from her home. Following a preliminary hearing, the trial court authorized the petition and released the children to Mosley under DHHS's supervision.

Beginning in August 2023, the trial court held an adjudicatory hearing in relation to DHHS's temporary-custody petition. During the hearing, Brock acknowledged that in January 2023, she was involved in a motor vehicle collision with the children in her vehicle, she consumed alcohol before the collision, and she did not have a valid driver's license at that time. Brock further acknowledged that on the following day, she took two handfuls of Tylenol because she "wanted to die." Brock stated that she lacked suitable housing for the children and had previously been diagnosed with depression, anxiety, PTSD, and bipolar disorder. She also explained that in 2022, she used a false form of identification in an attempt to access funds from someone else's bank account. She was charged with identity theft and later sentenced to a term of probation.[2] And, according to the individual that prepared the petition on behalf of DHHS, at some point after her suicide attempt, Brock contacted an adoption agency to explore the possibility of voluntarily relinquishing her parental rights. On these bases, the trial court found statutory grounds to exercise jurisdiction over the children and adopted a parent-agency treatment plan for Brock.

While the termination proceedings were pending in the Juvenile Section of the Wayne Circuit Court Family Division, Mosley moved in the Domestic Relations Section of the Wayne Circuit Court Family Division to modify the former child custody award. He sought sole legal and physical custody of the children. In his supporting brief, Mosley argued that on the basis of the allegations set forth in DHHS's temporary-custody petition, there had been a change of circumstances such that the trial court's child custody award no longer served the children's best interests. In November 2023, the trial court referred the child custody dispute to the Juvenile Section of the Wayne Circuit Court Family Division in accordance with Wayne Circuit Court Administrative Order 14-09J(C)(1)(c).

In February 2024, the trial court held a hearing regarding Mosley's motion to modify the former child custody award. Brock did not attend the hearing. The trial court took judicial notice of the court files in the pending termination and child custody matters. The court files included a January 2024 foster care report, which provided in part:

---

[2] It is unclear from the record whether Brock was found guilty at trial or otherwise convicted following entry of a plea.

[Brock] appears to be on track with the goal of reunification. One of her main barrier[s] is obtaining housing. [Brock] has recently reported that she has employment and is seeking housing resources as well as a new space . . . [Brock] has been attending weekly therapy[,] and the therapist reports there has been progress. [Brock] has additionally agreed to begin her parenting education classes as well.

* * *

Currently [Brock] is visiting the children weekly, she also has community visits for special occasions with the designee of [Mosley]. The visits have been going well. [Brock] just began supported visitation services . . . this will allow her to be supervised by a parent educator who will provide[] her with parenting education and guidance.

* * *

Both children have indicated that they enjoy living with their father. There is a strong bond. [Mosley] is proactive in making sure the children attend school, after school activities[,] and they are living in the least restrictive environment. Medical and dentals are up to date[,] and DHHS continues to ensure they remain up to date. [Mosley] facilitates co-parenting with [Brock] and allows her to continue to be apart [sic] of the girl's activities.

On the basis of the information within the court files, the trial court found by a preponderance of the evidence that proper cause or a change of circumstances warranted modifying the child custody award. The trial court also found that the children had an established custodial environment with Mosley. It then considered the best-interest factors set forth in MCL 722.23 and found by a preponderance of the evidence that awarding Mosley sole physical and legal custody of the children served their best interests. This appeal followed.

## II. STANDARDS OF REVIEW

The Child Custody Act of 1970 governs the resolution of most custody disputes in Michigan. See *Mauro v Mauro*, 196 Mich App 1, 4; 492 NW2d 758 (1992). The purpose of the Act is to promote the best interests and welfare of children, and we must construe the Act liberally to serve that purpose. See MCL 722.26(1). We must affirm all orders and judgments of the circuit court pertaining to a child custody dispute "unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28. See also *Brown v Brown*, 332 Mich App 1, 8; 955 NW2d 515 (2020).

"The great weight of the evidence standard applies to all findings of fact." *Vodvarka v Grasmeyer*, 259 Mich App 499, 507; 675 NW2d 847 (2003). "A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction." *Pennington v Pennington*, 329 Mich App 562, 570; 944 NW2d 131 (2019). "An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions." *Vodvarka*, 259 Mich App at 507-508. An abuse of discretion exists "when the trial court's decision is so palpably and

grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias." *Berger v Berger*, 277 Mich App 700, 705; 747 NW2d 336 (2008). "Questions of law are reviewed for clear legal error." *Vodvarka*, 259 Mich App at 508. Clear legal error occurs when the trial court "incorrectly chooses, interprets, or applies the law." *Brown*, 332 Mich App at 8 (quotation marks and citation omitted). We review de novo the trial court's application of the law to the facts, see *Kaeb v Kaeb*, 309 Mich App 556, 564; 873 NW2d 319 (2015), and we give "deference to the trial court's factual judgments and special deference to the trial court's credibility assessments." *Brown*, 332 Mich App at 9.

## III. BEST-INTEREST FACTORS

Brock argues that that the trial court clearly erred by failing to adequately address all of the best-interest factors set forth in MCL 722.23 before modifying the former custody award and awarding sole physical and legal custody to Mosley. We disagree.

Under the Child Custody Act of 1970, a trial court may modify a child custody order "for proper cause shown or because of change of circumstances," provided that doing so serves the child's best interests. See MCL 722.27(1)(c). If a trial court determines that a proper cause or a change of circumstance exists, it must then "determine whether there is an established custodial environment with one or both parents before making any custody determination." *Kessler v Kessler*, 295 Mich App 54, 61; 811 NW2d 39 (2011) (emphasis omitted). "[A] party who seeks to change an established custodial environment of a child is required to show by clear and convincing evidence that the change is in the child's best interests." *Id*. But if the proposed modification does not alter the established custodial environment, "the burden is on the parent proposing the change to establish, by a preponderance of the evidence, that the change is in the child's best interests." *Shade v Wright*, 291 Mich App 17, 23; 805 NW2d 1 (2010).

Before a trial court modifies custody, it must hold an evidentiary hearing. *Johnson v Johnson*, 329 Mich App 110, 128; 940 NW2d 807 (2019). In doing so, "the trial court must determine whether the change of custody is in the children's best interests and, to that end, must make specific findings of fact regarding each of the 12 statutory best-interest factors." *Id*. at 128-129. MCL 722.23 sets forth the relevant best-interest factors as follows:

> As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:
>
> (a) The love, affection, and other emotional ties existing between the parties involved and the child.
>
> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.
>
> (c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

-4-

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

Here, the trial court correctly found that factor (a) weighed in Mosley's favor. The trial court noted that Brock had a "history of mental illness, prior [Child Protective Services] history, untreated mental health issues, and substance abuse issues, and [a] criminal history . . . ." Further, during the custody hearing, the parties agreed that Brock was "being charged with three counts of accessory after the fact to a felony" in an unrelated matter. This was a new charge at the time of the custody hearing. The trial court observed, "[Brock is] still involving herself, allegedly, in criminal activity. That doesn't make for a healthy bond with a child when you're [] struggling with all those issues." The record supports the trial court's finding. The children were not in Brock's care for almost one year before the custody hearing, and Brock continued to struggle with alcohol abuse and had ongoing criminal proceedings during that period. In contrast, Mosley met the children's material needs and provided them with stability throughout the proceedings. As a result, the trial court did not err when it found factor (a) weighed in Mosley's favor.

The trial court correctly found that factor (b) weighed in Mosley's favor. It found that Mosley "clearly demonstrated he has the better capacity and disposition to provide appropriate, constructive love, affection, and guidance, and education in raising the children appropriately." The record supports the trial court's finding. Brock engaged in criminal activity, struggled with substance abuse, and suffered from multiple mental health conditions. In contrast, Mosley met the children's material needs and provided them with stability throughout the proceedings. Accordingly, the trial court did not err when it found that factor (b) weighed in Mosley's favor.

The trial court also correctly found that factor (c) weighed in Mosley's favor. The January 2024 foster care report provided that "[SIM] and [SAM] [] are doing well in the parental home of their father. Both children have indicated that they enjoy living with their father. There is a strong bond." Further, Mosley "is proactive in making sure the children attend school, after school activities and they are living in the least restrictive environment." The record reflects that the trial court correctly found that Mosley "clearly demonstrated he has the better capacity and disposition to provide appropriate, constructive love, affection, and guidance, and education in raising the children appropriately."

The trial court correctly found that factor (d) weighed in Mosley's favor. The children were in his care throughout much of the proceedings. The trial court noted that Brock was unable to provide a stable environment for the children. She struggled with substance abuse, suffered from multiple mental health issues, and lacked a safe home for the children. In comparison, Mosley had a safe home for the children, the children "were loved and cared for and appropriately supervised, and there's good structure and security in the home."

The trial court did not explicitly refer to factor (e). But, the trial court appears to have considered it when it stated that Mosley's home "is a permanent family home where the children's needs are being met . . . ."

The trial court correctly found that factor (f) weighed in favor of Mosley because Brock's choices have "an adverse effect on her children." As previously discussed, Brock struggled with substance abuse and was involved in a motor vehicle collision with the children in her vehicle. Brock also had a criminal history and lacked stable housing. The record supports the trial court's finding concerning factor (f).

The trial court correctly found that factor (g) weighed in Mosley's favor. Brock struggled with substance abuse and had previously been diagnosed with depression, anxiety, PTSD, and bipolar disorder. She also attempted suicide in January 2023. Regarding factor (h), because the children lived with Mosley throughout much of the proceedings, the trial court did not err when it found his home "is the community of record for the children, and that's where they look to for all their needs, for structure, community, school, and home structure."

The trial court did not consider factor (i), instead finding that "[t]he children are of a very young age for the Court to take into account . . . the reasonable preference of the children." This may have been an error—at least for the child who was over six years old—but in light of the trial court's other findings, we conclude the error was harmless. This Court has repeatedly acknowledged that "[c]hildren of six . . . years of age are old enough to have their preferences given some weight in a custody dispute, especially where there was a prior custody arrangement." *Bowers v Bowers*, 190 Mich App 51, 55-56; 475 NW2d 394 (1991). See also *Quint v Quint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368002); slip op at 7, citing *Pierron v Pierron*, 282 Mich App 222, 258-259; 765 NW2d 345 (2009) ("[T]his Court has held that children as young as six-years of age are presumed to be able to do so, absent some extenuating circumstance."). At the time of the termination hearing, one child was five years old, and one was just over six years old. Under *Quint*, without a finding to the contrary, the six-year-old was likely old enough to express a preference. *Quint*, ___ Mich App at ___; slip op at 7. Nonetheless, the trial court's error regarding factor (i) was harmless because the other factors the trial court

considered were vastly more significant to its determination in this case. See *Fletcher v Fletcher*, 447 Mich 871, 889; 526 NW2d 889 (1994) ("[U]pon a finding of error an appellate court should remand the case for reevaluation, unless the error was harmless."); *Brown*, 332 Mich App at 26 (deeming an error in a trial court's best-interest analysis harmless when "in all other respects the remaining best-interest factors overwhelmingly supported" the court's ultimate decision).

The trial court correctly found that factor (j) weighed in Mosley's favor. The January 2024 foster care report provided that "[Mosley] facilitates co-parenting with [Brock] and allows her to continue to be apart [sic] of the girl's activities." It also provided that "[Brock] is visiting the children weekly, she also has community visits for special occasions with the designee of [Mosley]. The visits have been going well." The record supports the trial court's finding that Mosley complied with visitation orders and facilitated a continuing relationship among Brock and the children. As for factor (k), the trial court did not err by concluding that it was irrelevant because there was no evidence of domestic violence involving Brock, Mosley, or the children. See *id.* ("[I]f a particular best-interest factor is irrelevant . . . the trial court need not say anything other than that the factor is irrelevant.").

The trial court adequately addressed all of the best-interest factors set forth in MCL 722.23 and did not abuse its discretion by awarding Mosley sole physical and legal custody of the children.

We therefore affirm.

/s/ Christopher P. Yates
/s/ Anica Letica
/s/ Noah P. Hood